(C. D. 166)

FRIEDLAENDER & CO., INC. v. UNITED STATES

United States Customs Court, Third Division

(Decided May 24, 1939)

*James W. Bevans* for the plaintiff.

*Webster J. Oliver,* Assistant Attorney General (*Daniel G. McGrath,* special attorney), for the defendant

*Bernard E. Perelson,* representing the Jewish War Veterans of the United States, as *amicus curiae.*

Before CLINE, EVANS, and KEEFE, Judges; EVANS, J., dissenting

CLINE, Judge: This is a suit, arising at the port of New York, in which the plaintiff protests against the action of the collector of

customs in refusing to permit delivery of certain decorated chinaware unless the articles were marked so as to show that Germany was the country of origin thereof. The pertinent parts of the protest read as follows:

Protest is hereby made, under Paragraph 514 of the Tariff Act of 1930, against your decision of the 13th instant, excluding from delivery one case (#1498/2) of merchandise imported by Friedlaender & Co., Inc. You state that it cannot be released because it was not properly marked.

It is our contention that the merchandise is of Czechoslovakian origin and is properly marked. It is our view that the origin of the merchandise is not changed in any way by the fact that before it could be shipped, Germany had obtained control over the Czechoslovakian territory, in which manufacture took place and from which country it was exported to the United States. This merchandise was completely manufactured in Czechoslovakia on orders placed before German occupancy of the Sudeten territory.

Entry of the merchandise was made on December 10, 1938, when the marking provisions of section 304 of the Tariff Act of 1930, as amended by section 3 of the Customs Administrative Act of 1938, were in force. The pertinent parts of the amended provisions read as follows:

(a) MARKING OF ARTICLES.—Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article. The Secretary of the Treasury may by regulations—

(1) Determine the character of words and phrases or abbreviations thereof which shall be acceptable as indicating the country of origin and prescribe any reasonable method of marking, whether by printing, stenciling, stamping, branding, labeling, or by any other reasonable method, and a conspicuous place on the article (or container) where the marking shall appear;

(2) Require the addition of any other words or symbols which may be appropriate to prevent deception or mistake as to the origin of the article or as to the origin of any other article with which such imported article is usually combined subsequent to importation but before delivery to an ultimate purchaser; and

(3) Authorize the exception of any article from the requirements of marking if—

\*     \*     \*     \*     \*     \*     \*

(c) ADDITIONAL DUTIES FOR FAILURE TO MARK.—If at the time of importation any article (or its container, as provided in subsection (b) hereof) is not marked in accordance with the requirements of this section, and if such article is not exported or destroyed or the article (or its container, as provided in subsection (b) hereof) marked after importation in accordance with the requirements of this section (such exportation, destruction, or marking to be accomplished under customs supervision prior to the liquidation of the entry covering the article, and to be allowed whether or not the article has remained in continuous customs custody), there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation, shall not be construed to be penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause. Such duty shall be levied, collected, and paid in addition to any other duty imposed by law and whether or not the article is exempt from the payment of ordinary customs duties.

The compensation and expenses of customs officers and employees assigned to supervise the exportation, destruction, or marking to exempt articles from the application of the duty provided for in this subsection shall be reimbursed to the Government by the importer.

(d) DELIVERY WITHHELD UNTIL MARKED.—No imported article held in customs custody for inspection, examination, or appraisement shall be delivered until such article and every other article of the importation (or their containers), whether or not released from customs custody, shall have been marked in accordance with the requirements of this section or until the amount of duty estimated to be payable under subsection (c) of this section has been deposited. Nothing in this section shall be construed as excepting any article (or its container) from the particular requirements of marking provided for in any other provision of law.

An inspection of the official documents forwarded by the collector shows that the invoice was certified by the American consul at Hamburg, Germany, on November 28, 1938, and that the seller of the goods was "Herman Scholtz Nachfolger., Camill Seidl. of Tiefenbach o/Desse, Sudentengau. Germany," the declaration of the seller being dated at Tiefenbach o/Desse on November 11, 1938.

A copy of the decision of the collector, against which this protest was filed, is attached to the papers forwarded by the collector. From an examination of this decision it is apparent that the collector's action was based on instructions from the Commissioner of Customs received in a telegram dated November 9, 1938, which is published in T. D. 49743, reading as follows:

*Products of Sudeten areas under German occupation*

Instructions regarding customs treatment of products exported from Sudeten areas under German occupation

TREASURY DEPARTMENT,
OFFICE OF THE COMMISSIONER OF CUSTOMS,
*Washington, D. C., November 10, 1938.*

*To Collectors of Customs and Others Concerned:*

There is published below a copy of a telegram dispatched on November 9, 1938, to collectors of customs, which is self-explanatory:

State Department having today announced to Treasury Department a change of jurisdiction from Czechoslovak to German in those Sudeten areas now under German occupation, products of those areas exported from any country on or after November 10, 1938, shall be regarded as products of Germany for the purposes of the marking provisions of the Tariff Act of 1930, and for determining applicable rates of duty. Such areas are to be regarded as parts of Germany on and after November 10, 1938, for determining dates of exportation for customs purposes. Give importers all possible notice.

JAMES H. MOYLE,
*Commissioner of Customs.*

[Filed with the Division of the Federal Register November 10, 1938, 12:12 p. m.]

When the case was called for trial, the following facts were stipulated by the parties:

1. That the merchandise forming the subject matter of this suit was shipped from the Sudeten territory after November 10, 1938.

2. That the merchandise consists of chinaware, which, at the time of exportation, was marked in a conspicuous place, as legibly, indelibly, and permanently as the nature of the article would permit, in the following manner, to wit, each article was marked with the name "Czechoslovakia."

3. That the chinaware forming the subject matter of this suit was supplied on orders from The Friedlaender Co., as indicated on the consular invoice, said orders being dated

March 5, 1938
June 3, 1938
July 14, 1938
September 23, 1938

4. That the said chinaware (included in the importation and covered by the aforesaid orders from The Friedlaender Co.) was completely manufactured in Czechoslovakia prior to November 10, 1938.

Counsel for the plaintiff contends in his brief that, since the chinaware was manufactured in the Sudeten area in Czechoslovakia before November 10, 1938, the change in jurisdiction over that territory does not affect the origin of the articles; that the statute prescribes that merchandise shall be marked to show the country of origin thereof rather than the country of exportation; that the country of origin of the goods was the country in which they were manufactured, namely, Czechoslovakia; and that, as the chinaware was marked at the time of importation so as to indicate that Czechoslovakia was the country of origin, the collector should have permitted the same to be released from customs custody without re-marking to indicate that Germany was the country of origin thereof.

The plaintiff cites a number of decisions of the Commissioner of Customs and *Marshall Field & Co.* v. *United States*, Abstract 47984, 46 Treas. Dec. 683, all holding that where merchandise is manufactured in one country and completed in another the marking shall indicate the name of the country in which it was completed as the country of origin. Those decisions do not contain the same state of facts which plaintiff contends exist in this case but he might have cited more applicable cases, such as the following: *Closset & Devers* v. *United States*, Abstract 37655, 73 Treas. Dec. 1112, where the court held that Java tea shipped from London, England, should have been marked so as to show that Java was the country of origin; *Reichenbach & Co., Inc.* v. *United States*, Abstract 39532, which covered linen which was manufactured in Ireland, sold in Switzerland and thereafter, without further processing, shipped to the United States. The court held that the linen should have been marked so as to indicate that Ireland was the country of origin.

The plaintiff cites article 528 (c) of the Customs Regulations of 1937, as amended in T. D. 49658, in support of his contention. That regulation reads as follows:

(c) The country of origin means the country of manufacture or production. Further work or material added to an article in another country must effect a

substantial transformation in order to render such other country the "country of origin" within the meaning of this article.

The plaintiff contends also that the Commissioner of Customs should have given importers a longer notice than one day to change the practice in regard to marking of merchandise from the Sudeten area and that in fact the importers were given no notice as T. D. 49743 was not published in the TREASURY DECISIONS until November 17, 1938. The plaintiff points out that when Germany seized the territory which was formerly Austria the Treasury Department, in T. D. 49503, prescribed that sixty days after the publication of the decision in the weekly TREASURY DECISIONS all articles from the territory which comprised the Republic of Austria should be marked to indicate Germany as the country of origin but within the sixty-day period a marking showing either Austria or Germany would be sufficient. The plaintiff directs our attention to the following provision in section 6 of the Customs Administrative Act of 1938 and argues that a change in practice with respect to marking, giving less than thirty days notice, is illegal:

SEC. 6. * * * No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of anti-dumping duties.

Counsel for defendant contends in his brief that section 304 of the Tariff Act of 1930, as amended, should be interpreted by the court to require imported merchandise to be marked to show the current name of the country of its origin and that importers are entitled to no notice with respect to marking of imported goods of the kind contemplated by the provisions above quoted from section 6 of the Customs Administrative Act of 1938. The defendant cites *United States Ex Rel. Mensevich* v. *Tod, Commissioner of Immigration at the Port of New York*, 264 U. S. 134, in which provisions of the immigration statutes were construed. In that case a warrant for the deportation of an alien to Grodno, Poland, had been issued. The statute provided that the deportation of aliens "shall at the option of the Secretary of Labor, be to the country whence they came or to the foreign port at which such aliens embarked for the United States." The alien claimed that prior to his immigration to the United States he had been a resident of the Province of Grodno, then a part of Russia, and that at the time the warrant for deportation issued Grodno had not been recognized by the United States as a part of Poland and that by the order for deportation he was denied rights guaranteed by the Federal Consti-

tution. The court, in deciding that the warrant for deportation was valid, said:

The term country is used in section 20 to designate, in general terms, the state which, at the time of deportation, includes the place from which the alien came. Whether territory occupied and administered by a country, but not officially recognized as being a part of it, is to be deemed a part for the purposes of this section, we have no occasion to consider. For, since the entry of the judgment below, the Treaty of Riga has so defined the eastern boundary of Poland as to include Grodno; and the United States has officially recognized this boundary line. Grodno is now confessedly a part of Poland. The validity of a detention questioned by a petition for *habeas corpus* is to be determined by the condition existing at the time of the final decision thereon. *Stallings* v. *Splain*, 253 U. S. 339, 343. Deportation to Poland is now legal.

The defendant points out that it has been the practice of the Treasury Department to direct changes in marking as soon as the name of a country is changed or as soon as a territory came within the jurisdiction of another country, citing T. D. 47639–1 where it was held that ninety days thereafter products of the Saar Basin should be marked "Germany," T. D. 49382–4 where it was held that sixty days thereafter products of the Irish Free State should be marked "Ireland," and T. D. 49503 regarding the products of Austria heretofore discussed.

Counsel for defendant argues that Congress reenacted section 304 in the Customs Administrative Act of 1938 without substantial change and if it had been dissatisfied with the practice of the Treasury Department in directing a change in marking it would have used language in the amendment designed to remedy the cause of the dissatisfaction, citing *Helvering* v. *Bliss*, 293 U. S. 144; *McFeely* v. *Commissioner of Internal Revenue*, 296 U. S. 102.

Counsel for the defendant argues further that, if the Treasury Department, in T. D. 49743, had permitted a leeway of thirty days or more before the order should take effect, confusion would result if in the interim merchandise imported from the Sudeten area under German jurisdiction was marked "Czechoslovakia" when it entered this country since there still remained a nation known as Czechoslovakia and a purchaser of the goods in the United States would be led to believe that the merchandise originated in the portion of Czechoslovakia not under German control.

The court has the benefit of a brief filed by an attorney, as *amicus curiae*, representing the Jewish War Veterans of the United States, but as the contentions therein are substantially the same as those set forth by the defendant, heretofore discussed, we deem it unnecessary to extend this decision by enumerating them.

The question of whether the direction of the Commissioner of Customs in T. D. 49743 is arbitrary because the ruling directed that, seven days before it was published in the TREASURY DECISIONS, all goods exported from any foreign country which were the products of

the territory which was formerly the Sudeten area of Czechoslovakia should be marked so as to indicate Germany as the country of origin, is immaterial in this case. That decision is not a customs regulation because it does not bear the approval of the Secretary of the Treasury (See T. D. 49047, I (b); *Scaramelli & Co.* v. *United States*, T. D. 47398; *Mitsui & Co., Ltd.* v. *United States*, T. D. 49357); hence the ruling is not binding on the court in any event and it is unnecessary to determine whether or not it is reasonable.

As to the question of whether the ruling is void under section 6 of the Customs Administrative Act of 1938, above quoted, in that it does not give a notice of thirty days after publication of the decision in the weekly TREASURY DECISIONS before the change in practice should take effect, the record contains nothing to show that there was an "established and uniform practice" and it does not appear that the ruling resulted in the "imposition of a higher rate of duty or charge," because the only question in this case is whether the importer should be compelled to re-mark his goods before they are released from customs custody. If they are re-marked, section 304 (c) of section 3 of the Customs Administrative Act of 1938 provides for no assessment of additional duty.

The main question for decision is whether the chinaware was marked at the time of importation so as to indicate the country of origin thereof. If it was, the collector erred in refusing to release the same to the importer upon the payment of regular duties thereon. The statute prescribes in plain language that every article of foreign origin imported into the United States shall be marked in such manner as to indicate to an ultimate purchaser the country of origin. The court has construed the words "country of origin" to mean the country in which imported merchandise was produced, citing *Closset & Devers* v. *United States, supra,* and *Reichenbach & Co., Inc.* v. *United States, supra.* It was held that the country from which the articles covered by those cases were shipped was not the country of origin even though they had entered the commerce of the exporting country. Under the decisions cited, if the goods herein involved were produced and completed in Czechoslovakia, or in the Sudeten area of Czechoslovakia seized by Germany, before Germany took jurisdiction of that territory, we are of opinion that the marking with the word "Czechoslovakia" is the marking prescribed by the statute, even though the goods were shipped from Germany after the jurisdiction had changed, but, if the merchandise was completed in the Sudeten area after Germany obtained jurisdiction, they would have to be marked "Germany" to comply with the statute.

The facts of this case were stipulated and paragraph 4 of the stipulation states that the chinaware *"was completely manufactured in Czechoslovakia* prior to November 10, 1938." It is clear, therefore, that the goods were not produced in Germany or in the Sudeten territory after

Germany assumed jurisdiction thereof. Since the merchandise was completely manufactured in Czechoslovakia, we hold that the word "Czechoslovakia" marked thereon is all the marking that is required by section 304 of section 3 of the Customs Administrative Act of 1938. The protest is sustained. Judgment will be entered in favor of the plaintiff.

### DISSENTING OPINION

EVANS, Judge: I regret that I cannot agree with my colleagues in this case. From my reading of the majority opinion herein I gather that the conclusion was controlled largely by paragraph 4 of the stipulation which reads:

That the said chinaware (included in the importation and covered by the aforesaid orders from THE FRIEDLAENDER Co.) was completely manufactured in Czechoslovakia prior to November 10, 1938.

The conclusion reached, in my judgment, is not in accord with the spirit and intention of the marking statute as amended by the Customs Administrative Act of 1938 (section 3). It seems clear to me that it was the desire of Congress in making said amendment that the ultimate purchaser of foreign-made merchandise should be able to determine upon inspection the nationality, so to speak, of the merchandise that he was about to buy. The *situs* of manufacture is settled by the stipulation. It is true that article 528 (*c*) of the Customs Regulations of 1937, as amended by T. D. 49658, states that "The country of origin means the country of manufacture or production." It also stated that "Further work or material added to an article in another country must effect a substantial transformation in order to render such other country the 'country of origin' within the meaning of this article." When the entire paragraph is read it is clear that the statement contained in the first sentence was made in view of the decisions of this court and the Court of Customs and Patent Appeals relating to merchandise that had been manufactured in one country and transported to another country for further work or complete finishing, and that it had no reference to a change of jurisdiction of the place of manufacture, or production, or origin. In view of the fact that at the time of importation there was still in existence a country known as Czechoslovakia, being that part of Czechoslovakia that was not under German jurisdiction, the marking which is sustained by the majority opinion would indicate to an ultimate purchaser that the instant merchandise had originated in that country instead of the Sudeten territory, which is now part of Germany. An ultimate purchaser might be willing to accept merchandise having its origin in Czechoslovakia but he might not be willing to accept merchandise having its origin in the former Sudeten territory which is now German territory.

The term "country of origin" as used in section 304, *supra*, as amended, should not, in my view, be so restricted as to limit the operation of the statute to the *situs* of the merchandise at the instant of its creation. Its origin, so far as it relates to American commerce, began when it started on its journey to the United States. At that moment the country of its origin was Germany. The jurisdiction of the Sudeten area changed from Czechoslovakia to Germany very suddenly and not, as usually happens, after long wars or conquests, so that their manufactures presumably continued uninterruptedly, first under one jurisdiction and then under another, and the marking statute should if possible be so construed as to give it the intended effect, that is, that foreign merchandise should always be marked in such a way that the ultimate purchaser would know whether he was buying German, Italian, Japanese, English, French, or any other country's goods.

In turning to the instruction given to collectors by the Commissioner as to the effective date of the change in marking, it is my opinion that the Commissioner was acting entirely within his legal right and that this provision was made for the purpose of carrying out the intent of Congress as expressed in the language of the amended marking statute.

For the reasons given I think the protest should be overruled.