(C. D. 379)

KUNREUTHER & MERFELD, INC. *v.* UNITED STATES

</div>

United States Customs Court, Third Division

(Decided October 8, 1940)

*Puckhafer, Rode & Rode* (*George J. Puckhafer* of counsel) for the plaintiff.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Daniel G. McGrath,* special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges, EVANS, J., not participating

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover additional duty assessed by the collector at the rate of 10 per centum ad valorem under section 304 (b) of the Tariff Act of 1930 on the ground that the merchandise was not legally marked at the time of importation.

The record shows that the imported merchandise consists of hops which were grown in Czechoslovakia and were packed in Germany and shipped from that country on December 31, 1936, which is prior to the date when Germany assumed control over any portion of Czechoslovakia. At the time of examination of the shipment it was found that the immediate containers of the hops—the bales—were marked to indicate that Germany was the country of origin. The collector required that before release from customs custody, the bales should be marked to show that Czechoslovakia was the country of origin.

The plaintiff claims that the goods were properly marked by the use of the word "Germany." The question involved is, What was the country of origin of the merchandise?

In the case of *Loblaw Groceterias, Inc.* v. *United States,* T. D. 46760, 64 Treas. Dec. 605, the court held that three motor chassis, which were originally made in England and were subsequently repaired in Canada by the addition of new materials which were made in England and were shipped from Canada to the United States after they were repaired, were properly marked by a legend showing that England was the country of origin. In construing the meaning of the word "origin" in the statute, the court said:

\* \* \* Section 304 of the Tariff Act of 1922 requires imported articles to be marked to indicate country of "origin," and Webster's New International Dictionary defines the word "origin" as follows:

1. The first existence or beginning; the birth; hence, parentage, ancestry.
2. That from which anything primarily proceeds; the fountain; spring; cause; occasion.

Applying the above definition to the facts in the case at bar, we find that England was the country of origin of these three chassis and also of the parts which were added thereto when repaired in Canada. On this state of the record, the marking "Made in England" which appeared thereon at the time of importation complied with the requirements of section 304 of the act of 1922, and the additional marking duty was not assessable on these importations.

A question was raised in the same case as to the legality of the collector's decision in assessing countervailing duty on the merchandise. An appeal was filed in the appellate court with respect to the decision on the countervailing duty but the review did not cover the part of the trial court's decision relating to the marking. *Loblaw Groceterias, Inc.* v. *United States,* 22 C. C. P. A. 479, T. D. 47481.

Other cases involving the marking of goods produced in one country and shipped from some other country to the United States are *Closset & Devers* v. *United States,* 73 Treas. Dec. 1112, Abstract 37655, and *Reichenbach & Co., Inc.* v. *United States,* 1 Cust. Ct. 430, Abstract 39532. In *Closset & Devers* v. *United States, supra,* tea produced in Java was shipped from England. The court held that the merchandise should be marked to indicate that Java was the country of origin. In *Reichenbach & Co., Inc.* v. *United States, supra,* it was held that linen woven in Ireland, sold and shipped to Switzerland, and from there sold and shipped to the United States, should be marked so as to indicate that Ireland was the country of origin. The two cases last described were cited in *Friedlaender & Co., Inc.* v. *United States,* 2 Cust. Ct. 406, C. D. 166, wherein it was held by this court that chinaware made in the Sudeten areas of Czechoslovakia before that territory became subject to the control of Germany, but shipped to the United States after the territory became a part of Germany, was properly marked by the word "Czechoslovakia." On appeal, however, that decision was reversed, the court holding that the merchandise should be marked to indicate that Germany was the country of origin. *United States* v. *Friedlaender & Co., Inc.,* 27 C. C. P. A. 297, C. A. D. 104. In the opinion of the majority of the appellate court, other cases holding that imported merchandise should be marked so as to indicate the country of production rather than the country of shipment were differentiated. It seems that the court was of opinion that, since there was a change in the name of the territory in which the merchandise was manufactured before shipment thereof, a marking showing the name of the country at the time the goods were manufactured would be deceptive inasmuch as other sections of the country retained the name Czechoslovakia. The court said:

The facts in this case differentiate it from those of any case of which we know. It appears that this is a case of first impression, in that the question to be deter-

mined is the legal marking of imported merchandise wholly manufactured in a country which became an integral part of another country before exportation.

The court adopted the following statement in the dissenting opinion of the trial court as expressing the court's understanding of the intent of the statute:

The term "country of origin" as used in section 304, *supra*, as amended, should not, in my view, be so restricted as to limit the operation of the statute to the *situs* of the merchandise at the instant of its creation. Its origin, so far as it relates to American commerce, began when it started on its journey to the United States. At that moment the country of its origin was Germany.

The conclusion reached by the court was that the place of manufacture was better described by the marking "Germany" than by the marking "Czechoslovakia" because at the time of shipment the place of manufacture was a part of Germany. It is apparent from a review of the decision that there was no intention to change the rulings of this court in the *Loblaw Groceterias, Inc., Closset & Devers,* and *Reichenbach & Co., Inc.,* cases, *supra,* for the court announced an intent of the statute which is in harmony with the conclusion in those cases, as follows:

* * * As we see it, Congress intended that the ultimate purchaser should be able to know by an inspection of the marking on imported goods the country of which the goods is the product. The evident purpose is to mark the goods so that at the time of purchase the ultimate purchaser may, by knowing where the goods were produced, be able to buy or refuse to buy them, if such marking should influence his will.

While the decision in *United States* v. *Friedlaender & Co., Inc., supra,* construed section 304 of the Tariff Act of 1930 as amended in the Customs Administrative Act of 1938, the provisions of section 304 of the Tariff Act of 1930 herein under consideration, insofar as the issue in this case is concerned, are substantially the same, as both statutes contain a provision directing that every imported article shall be marked "in such manner as to indicate the country of origin of such article."

In consonance with the views expressed in the decisions cited, we hold that the merchandise in this case was not legally marked when imported. The protest is overruled. Judgment will be entered in favor of the defendant.