County of Beaver *v.* Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission. Penn Central Transportation Company, Intervening Appellee. County of Beaver, Appellant.

Submitted on briefs, October 27, 1976, to President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Robert J. Masters,* for appellant.

*Edward J. Morris,* Counsel, with him *Candace N. Kreiger,* Assistant Counsel, *John B. Wilson,* Assistant Counsel, for appellee.

*John K. Clements,* for intervening appellee.

OPINION BY JUDGE BLATT, February 9, 1977:

On January 27, 1969 the Pennsylvania Public Utility Commission (PUC) ordered Beaver County (County) to compensate landowners for property taken to construct a highway overpass designed to eliminate a railroad crossing in the County's Borough of Rochester. The County did not appeal this order. Following completion of the overpass, the Penn Central Transportation Company (Penn Central) requested compensation from the County for certain property taken for the project, but the County refused payment on the basis that the 1969 PUC order did not require it to compensate the railroad company. Penn Central then applied to the PUC for a determination of the fair market value of the property, and on September 10, 1973 the PUC ordered the matter to be

submitted to the Court of Common Pleas of Beaver County for the ascertainment of damages as authorized by Section 411 of the Public Utility Law[1] (Act).

On March 24, 1976, the lower court ordered the PUC to clarify its September 10, 1973 order by specifying the property to be appraised and by designating the parties to be liable for payment of damages.[2] The PUC complied with this request by issuing an order dated May 5, 1976 which listed the tracts of land for which Penn Central was to be reimbursed, which specified that its order of January 27, 1969 provided that the County reimburse Penn Central for the appropriation of non-operating, right-of-way property, and which referred the matter back to the court for a determination of property damages. The County has appealed to us from this May 5, 1976 order.

The PUC, joined by the intervenor, Penn Central, has moved to quash the appeal for untimeliness and for failure to specifically and concisely state the errors assigned to the May 5, 1976 order as required by the Act. We find it unnecessary to address these issues because the order in question is interlocutory and, for that reason, this appeal must be quashed.

A PUC order issued pursuant to Section 411 of the Act, 66 P.S. §1181, which directed the court of common pleas to determine the amount of damages due to property owners resulting from the reconstruction of

---

[1] Act of May 28, 1937, P.L. 1053, as amended, 66 P.S. §1181, permits the PUC to determine both the proportion and amount of damages to be paid by the parties or, in the alternate, the PUC may apportion the liability and then "submit to the court of common pleas of the county wherein the property affected is located, the determination of the amount of damages to any property owner due to such condemnation."

[2] The briefs of all parties here agree on the nature and date of the court's order which is missing from our record.

a highway bridge was held to be interlocutory and an appeal taken from that order was quashed in *Springfield Township Commissioners v. Pennsylvania Public Utility Commission*, 206 Pa. Superior Ct. 155, 212 A.2d 844 (1965). We believe that the PUC's May 5, 1976 order here is merely a clarification of its September 10, 1973 referral order, and that it, too, is interlocutory.

Section 411 of the Act provides that an appeal may be taken *after* an award of damages has been made by viewers:

> [S]uch court shall appoint viewers . . . *from whose award of damages an appeal to said court shall lie* on the part of any person or party aggrieved thereby under the general law applicable to the appointment of viewers, for the ascertainment of damages due to the condemnation of private property for public use. (Emphasis added.)

No such award, of course, has been made here.

The County argues, however, that the May 5, 1976 order places additional liability upon it and that the order actually constitutes an amended order which cannot be issued without a hearing.[3] After carefully reviewing both the May 5, 1976 order and the original order of January 27, 1969, we are unable to agree that the former is an amended order as contended, for the County's liability for railroad property taken during construction of the highway overpass was specifically established in the first order as follows:

> 15. That Pittsburgh, Fort Wayne and Chicago Railway Company and Penn Central Com-

---

[3] Section 1007 of the Act, 66 P.S. §1397, provides in pertinent part:

> The commission may, at any time, after notice and after opportunity to be heard as provided in the case of complaints, rescind or amend any order made by it.

pany each pay any money to which it may be entitled severally as compensation for any of its *operating right-of-way property* taken, injured or destroyed by reason of the construction of the crossing project in accordance with this order.

16. That Beaver County pay all compensation for damages due to the owners, *exclusive of Pittsburgh, Fort Wayne and Chicago Railway Company and Penn Central Company, as herein above provided,* for property taken, injured or destroyed by reason of the construction of the crossing project in accordance with this order. (Emphasis added.)

We believe that Paragraph 16, when read together with Paragraph 15, clearly provides that Penn Central, as any other landowner, may be compensated for non-operating property taken for the project. In addition, the discussion portion of that first order reveals that the issue of liability for non-operating property was raised at the hearings:

The carrier will release damages for any of its operating right of way required for the project but does not agree to release damages for any of its property other than operating right of way.

If the County disagreed with this assessment of liability, it was required to bring an appeal from that first order within thirty days after service of the order as provided in Section 1101 of the Act, 66 P.S. §1431. And, when a party chooses not to appeal an administrative order imposing some obligation upon it, that party cannot contest the unappealed order in some future proceeding. *See Department of Environmental Resources v. Wheeling-Pittsburgh Steel Corp.,* 22 Pa. Commonwealth Ct. 280, 348 A.2d 765 (1975). After failing to appeal at the proper time, the Coun-

516

ty cannot now, seven years later, raise the issue of liability.

For these reasons, we grant the motion of the PUC, joined in by Penn Central, and quash the appeal.

ORDER

AND Now, this 9th day of February, 1977, the appeal of the County of Beaver is hereby quashed.