Gateway Coal Company, Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

Argued February 9, 1979, before Judges CRUM-LISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Henry McC. Ingram*, with him *Philip C. Wolf*, and *Rose, Schmidt, Dixon, Hasley & Whyte*, for petitioner.

*Dennis W. Strain*, Assistant Attorney General, for respondent.

OPINION BY JUDGE WILKINSON, JR., March 30, 1979:

This is an appeal from an order of the Environmental Hearing Board (Board) which sustained a motion to dismiss a portion of an appeal taken by petitioner Gateway Coal Company from an action by the respondent Department of Environmental Resources (Department). We affirm.

This controversy involves procedures to be used to test for methane gas in connection with a new roof support system in petitioner's underground bituminous mine. Petitioner received initial approval to use the new system in the mine through the Commissioner of Deep Mine Safety (hereafter "Commissioner"). Thereafter, by letter dated August 12, 1975, the Commissioner rescinded that portion of the plan calling

for testing for methane gas at the last row of permanent roof supports prior to bringing the roof support machine into place. The Commissioner stated in the letter:

> This plan for testing methane gas is contrary to the requirements of Section 242(d) and 316 (h) of the Pennsylvania Bituminous Coal Mine Act[1] which requires a test for methane gas to be made twelve (12) inches from the roof, face and rib of the working place before a machine is taken therein. . . .

> I am, therefore, requesting that you contact [the] district mine inspector in order to formulate a plan of testing for methane gas which is in accordance with the requirements of the law.

Whether the act of disapproval in this letter is an appealable order is one of the pivotal issues in this case.

Thereafter the Commissioner appointed a Commission of mine inspectors pursuant to Section 124 of the Act, 52 P.S. §701-124, to assist in developing a procedure to test for methane gas using the roof support system. The Commission report, approved by the Commissioner, recommended the tests be made at the working face not less than 12 inches from the roof before electrical equipment constituting part of the support system was brought into place. Subsequently, it appears that the Director of Bituminous Regional Mine Safety appointed the same mine inspectors to a second commission for the same purpose with the same result.

On November 29, 1976, 15 months after the Commissioner's decision to rescind his prior approval, pe-

---

[1] Act of July 17, 1961, P.L. 659, *as amended*, 52 P.S. §701-242 and §701-316(h) (Act).

titioner filed an appeal with the Board claiming to be aggrieved by all the aforementioned actions. The Department filed a motion to dismiss as untimely. The petitioner on March 8, 1977 filed a petition for supersedeas requesting the Board reinstate its original plan. A hearing was held on the motion to dismiss and the supersedeas petition. The Board issued an opinion which concluded that the Commissioner's letter of August 12, 1975 constituted an "action" under the Rules of the Board[2] which became final when petitioner failed to appeal within the 30 days of receipt. However, the Board concluded that the Department's subsequent actions rejecting amendments proposed by the petitioner to bring the new system into compliance constituted final actions and the appeal as to these two actions was thus timely.

The principal issues raised in this appeal are (1) whether the Commissioner had the authority under the Act to withdraw approval of the roof support system and (2) whether the original letter of the Commissioner rescinding his approval was a final appealable action within the meaning of Section 1921-A of The Administrative Code of 1929[3] and Section 21.2 of the Rules of the Board.[4]

Petitioner first argues that under Section 253(a), 52 P.S. §701-253(a), of the Act the local mine inspector has the authority, rather than the Commissioner, to approve or disapprove these plans. It is clear that Section 253 of the Act gives the mine inspector the authority to enforce the roof support procedures and places on the mine inspector the general duty of ascertaining initially that roof support procedures are

[2] 25 Pa. Code §21.2.

[3] Act of April 9, 1929, P.L. 177, *as amended,* added by the Act of December 3, 1970, P.L. 834, *as amended,* 71 P.S. §510-21.

[4] 25 Pa. Code §21.2.

being conducted in accordance with the Act. A full reading of subsections (a), (b) and (c) of Section 253, however, convinces us that this authority is neither exclusive nor preclusive, especially when new methods and procedures are at issue. While the mining industry may debate whether the automated roof support system (equipped with both a roof drill and attached support system) fits more nearly into the definitions contained in subsection (a) or (b), it is clear from the record that petitioner sought approval of the new system as an addendum to a previously approved plan for a permanent support system. Section 253(c) provides that where a new procedure to a previously adopted support system is proposed by the mine operator this application is to be submitted first to the mine inspector and his recommendation submitted to the Secretary for his approval or rejection in accordance with subsection (b). There is no dispute that the local mine inspector approved the initial support plan offered by petitioner and approved by the Commissioner; neither is there a dispute that the Commissioner was acting for the Secretary and exercising the Secretary's authority under Section 253(b) and (c). Accordingly, we find that the action taken by the Commissioner in this case was in accordance with the provisions of the Act.

Turning then to the question of whether the original letter of August 12, 1976 was a "final" action from which an appeal should have been timely taken, petitioner argues that this letter by its terms and in light of subsequent events was intended and properly interpreted as merely advisory and that therefore no basis for an appeal was then indicated.

In order for an action of the Department to constitute a final action from which an appeal can be taken, the determination of the department must di-

rect compliance with an Act and impose some liability or otherwise effect the obligations or duties of a person. *Department of Environmental Resources v. Wheeling-Pittsburgh Steel Corp.,* 22 Pa. Commonwealth Ct. 280, 348 A.2d 448 (1975), *reversed and remanded on other grounds,* 473 Pa. 432, 375 A.2d 320 (1977); *County of Beaver v. Pennsylvania Public Utility Commission,* 28 Pa. Commonwealth Ct. 511, 369 A.2d 509 (1977). The Commissioner's statement in his August 12, 1975 letter that petitioner's proposal to test for methane gas at the last permanent roof support is contrary to law, within the context of Section 242(d) and 316(h) of the Act, 52 P.S. §701-242(d) and §701-316(h), constituted a final decision regarding the testing procedures proposed by petitioner. The reference of the matter to the local mine inspector was, by its terms, for the purpose of formulating a new plan of acceptable procedure. As such, the letter here is clearly distinguishable from that in *Standard Lime & Refractories Co. v. Department of Environmental Resources,* 2 Pa. Commonwealth Ct. 434, 279 A.2d 383 (1971), where the initial action was referred to a departmental superior for further action to enforce the initial determination. Further, the later negotiations with and action by the Department do not aid petitioner's cause, since it is clear that the subsequent reports and letters from the Commissioner consistently rejected any proposal by which methane gas would be tested at the last row of bolts of the permanent system.

Accordingly, we will enter the following

ORDER

AND Now, March 30, 1979, the order of the Environmental Hearing Board at E.H.B. Docket No. 76-163-C, dated November 21, 1977, is hereby affirmed.