GLOBAL ECO–LOGICAL SERVICES,
INC. and Atlantic Coast Demolition
and Recycling, Inc., Petitioners,

v.

COMMONWEALTH of Pennsylvania,
Department of Environmental
Protection, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2001.
Decided Dec. 11, 2001.

James G. Wiles, Philadelphia, for petitioners.

Anderson L. Hartzell, Conshohocken, for respondent.

Before SMITH, J., FRIEDMAN, J., and JIULIANTE, Senior Judge.

**FRIEDMAN, Judge.**

Global Eco–Logical Services, Inc. (Global) and Atlantic Coast Demolition and Recycling, Inc. (ACDR), (together, Atlantic), petition for review of a February 1, 2001 order of the Environmental Hearing Board (EHB) granting summary judgment in favor of the Department of Environmental Protection (DEP) and dismissing Atlantic's appeals. The petition stems from Atlantic's violation of, and DEP's enforcement of, a consent order and agreement (CO & A) between the parties. We affirm.

Global is the parent corporation of ACDR, which operated a waste transfer facility (Facility) in Philadelphia under Permit No. 101581 (Permit), issued by DEP on October 6, 1992 pursuant to the Solid Waste Management Act (SWMA).[1] On February 8, 2000, Atlantic and DEP entered into the CO & A as a means of resolving litigation between the parties that stemmed from a March 3, 1999 DEP order revoking Atlantic's Permit.[2]

Paragraph V(3) of the CO & A, entitled "Corrective Action," requires that Atlantic

---

1. Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§ 6018.101–6018.1003. DEP is the agency with the duty and authority to administer and enforce the SWMA and the rules and regulations promulgated thereunder.

2. The prior litigation, relevant here only as background for the CO & A, is briefly summarized as follows. On November 19, 1998, DEP issued an Order and Civil Penalty Assessment against Atlantic based on violations that DEP uncovered during numerous inspections of the Facility. The November 19, 1998 Order required Atlantic to pay a civil penalty of $135,000 and to submit various documents relating to Atlantic's operation of the Facility. (CO & A, ¶¶ E, F; R.R. at 14.) Atlantic neither appealed from, nor complied with, the November 19, 1998 Order.

Consequently, on March 3, 1999, DEP issued a Permit Revocation Order and Civil Penalty Assessment, in which DEP formally revoked Atlantic's Permit and assessed $74,000 in civil penalties, based on Atlantic's failure to comply with the November 19, 1998 Order. Atlantic appealed the March 3, 1999 Revocation Order to the EHB and also filed a petition for supersedeas. On March 16, 1999, DEP issued a Bond Forfeiture relating to bonds supplied by Atlantic in connection with its Permit. After Atlantic filed an appeal from DEP's Bond Forfeiture, the matters were consolidated for purposes of appeal. (CO & A, ¶ G; R.R. at 15.)

Following a hearing on Atlantic's petition for supersedeas, the parties entered into a Stipulated Order for Temporary Supersedeas, in which the parties agreed that: (1) the EHB would grant a 90–day supersedeas of DEP's March 3, 1999 Revocation Order and March 16, 1999 Bond Forfeiture so that Atlantic could reopen for business; (2) Atlantic would pay DEP $135,000 within 4 days to satisfy the November 19, 1998 Civil Penalty Assessment;

immediately cease accepting waste at the Facility in the event that "Atlantic fails to submit an Annual Operations Report as required by Section 279 of [DEP's] regulations, 25 Pa.Code § 279.252." (CO & A, ¶ V(3)(c)(iii); R.R. at 23.) This paragraph also includes an "Automatic Revocation Provision" stating that, if Atlantic violates any of the conditions set forth in paragraph V(3)(c), the Permit shall be deemed revoked by operation of the CO & A. (CO & A, ¶ V(3)(d); R.R. at 24.)

Paragraph V(4) of the CO & A, entitled "Civil Penalty Settlement," requires Atlantic to pay $400,000 in civil penalties to resolve Atlantic's liability for certain prior violations, and the paragraph sets forth a schedule for the payment of these penalty amounts.[3] Like paragraph V(3), paragraph V(4) also includes an "Automatic Revocation Provision." That Provision states:

> In the event that Atlantic fails to pay said civil penalty pursuant to this Para-

and (3) Atlantic would, within 45 days, fully comply with the requirements of the November 19, 1998 Order and pay the $74,000 civil penalty for its past failure to comply with that Order. By the end of the 90–day supersedeas, DEP was to inform the EHB whether DEP would withdraw its March 3, 1999 Revocation Order and March 16, 1999 Bond Forfeiture. (CO & A, ¶ J; R.R. at 16.)

On June 17, 1999, after further inspections revealed that Atlantic continued to operate the Facility in violation of the Permit, the SWMA and DEP's rules and regulations, DEP notified Atlantic and the EHB that DEP intended to continue Permit revocation proceedings against Atlantic following expiration of the 90–day supersedeas. (CO & A, ¶¶ I, K, L, M, N; R.R. at 15–18.) At the conclusion of hearings on the Permit revocation, the EHB refused to extend the temporary supersedeas, and, therefore, the Stipulated Order temporarily suspending the March 3, 1999 Revocation Order expired with Atlantic having failed to comply with its requirements. (CO & A, ¶ Q; R.R. at 20.)

However, on August 4, 1999, the EHB again granted a supersedeas to Atlantic, and, on September 17, 1999, the parties reached an agreement that allowed Atlantic to reopen the Facility. (CO & A, ¶¶ R, S; R.R. at 20–21.) In granting the second supersedeas, the EHB found that Atlantic's continued Permit violations during the grace period created by the temporary supersedeas made it unlikely that Atlantic would prevail on its argument that it is able and willing to comply with the law. Nevertheless, the EHB found "just enough hesitation regarding [DEP's] likelihood of success on the propriety of choosing the ultimate remedy to justify issuance of a conditional supersedeas," pending a full hear-

ing on the merits of Atlantic's appeal of the March 3, 1999 Revocation Order. (O.R., Exhibit D, EHB op. of August 4, 1999 at 9–10.) The EHB also viewed the additional supersedeas period as a final test of Atlantic's ability and willingness to comply with the law and as a way to shed further light on the question of whether DEP was motivated by ill-will. (O.R., Exhibit D, EHB op. of August 4, 1999 at 10.) Thereafter, Atlantic agreed to assume civil penalty liability for its continued violations after the date of the Stipulated Order "in the context of global settlement of its appeal of [DEP's] Revocation Order." (CO & A, ¶¶ T, U; R.R. at 21–22.)

Finally, both parties expressed a desire to avoid further litigation and amicably settle Atlantic's appeal of DEP's March 3, 1999 Revocation Order. As a result, on February 8, 2000, the parties entered the CO & A, recognizing its terms as ordered by DEP and agreed to by Atlantic "[a]fter full and complete negotiation of all matters set forth in this [CO & A] and upon mutual exchange of covenants contained herein, . . . . and intending to be legally bound." (CO & A, ¶ V; R.R. at 22.) Atlantic consented to the entry of the CO & A as a final order of DEP, and Atlantic knowingly waived any right to appeal the CO & A or challenge its content or validity. The CO & A was signed by Atlantic's attorney, signifying prior consultation between Atlantic and its counsel. (CO & A, ¶ V(19); R.R. at 30–31.)

3. The schedule calls for an initial payment of $100,000 on March 15, 2000 and eleven more payments of $27,500 each between May 1, 2000 and October 1, 2002. (CO & A, ¶ V(4); R.R. at 24–25.)

graph, the Permit shall be deemed revoked by operation of this [CO & A]. Atlantic shall surrender its Permit to [DEP] within 2 days of said failure and shall close the [F]acility within 7 days in accordance with Condition [4]9 of the Permit. In addition, the bond associated with the Permit shall be forfeited to [DEP].

(CO & A, ¶ V(4); R.R. at 24–25.)

Atlantic made the first civil penalty payment required by the CO & A; however, Atlantic failed to make the second payment, due on May 1, 2000. Consequently, by letter dated May 16, 2000, DEP notified Atlantic that the Permit was automatically revoked pursuant to paragraph V(4) of the CO & A; the letter stated that Atlantic was required to surrender the Permit to DEP by May 3, 2000 and was required to cease operations and close the Facility by May 8, 2000.[4] (S.R. at 6b.) By letter dated July 28, 2000, DEP further notified

Atlantic that, because Atlantic failed to make the May 1, 2000 penalty payment, Surety Bond No. 125514, associated with the Permit, would be forfeited to DEP in accordance with the CO & A and the SWMA. (S.R. at 35b.)

On June 14, 2000[5] and August 24, 2000, respectively, Atlantic filed notices of appeal to the EHB from the May 16, 2000 revocation letter and from the July 28, 2000 bond forfeiture letter;[6] these appeals subsequently were consolidated for consideration by the EHB. (R.R. at 3, 6, 11, 12.) On November 16, 2000, DEP filed a motion for summary judgment, after which Atlantic amended its notices of appeal to assert a new legal theory drawn from *Harriman Coal Corporation v. Department of Environmental Protection*, EHB Docket No. 99–072–C (Opinion issued August 22, 2000)[7] (holding that DEP lacked authority to include an automatic revocation provision in a permit). Based on *Harriman*,

---

4. In its petition for review filed with this court, and in its brief, Atlantic contends that DEP refused to accept Atlantic's subsequent tender of the May 1, 2000 payment, offered as a means of curing Atlantic's unintended violation of the CO & A. Atlantic claims that DEP's decision to enforce the CO & A's Automatic Revocation Provision rather than accept Atlantic's offer of a cure was the result of DEP's longstanding bias against Atlantic, as evidenced by the fact that DEP took this rigid position at a time when Atlantic had corrected the problems which gave rise to the prior litigation. (O.R., Atlantic's Amended Petition for Review, *see* generally, ¶¶ 8–9, 23–28, 35–42.)

5. On June 16, 2000, Atlantic also filed a petition for temporary and permanent supersedeas, which the EHB denied on June 23, 2000. (R.R. at 3–4.)

6. On September 12, 2000, DEP sent Atlantic a third letter stating that DEP had not received Atlantic's Annual Operations Report for 1999, and its associated fee, as required by paragraph V(3) of the CO & A, and, further, DEP had not received the penalty payment due on August 1, 2000. DEP stated that these viola-

tions independently triggered the automatic penalties in the CO & A. (S.R. at 49b.) Although Atlantic did not appeal from this third letter, the EHB determined that this failure did not defeat Atlantic's challenge to the prior letters. (EHB op. of February 1, 2001 at 6–8, S.R. at 44b–46b.)

7. On December 5, 2000, DEP filed a motion to strike a paragraph from one of Atlantic's notices of appeal. (R.R. at 6.) In its answer to DEP's motion to strike, Atlantic included a cross-motion for leave to amend its notices of appeal, pursuant to 25 Pa.Code 1021–53(b), in order to set forth its argument based on *Harriman*. On January 11, 2001, the EHB issued an opinion and order granting Atlantic's motion to amend, and, because the amended appeal would remove the paragraph that was the subject of DEP's motion to strike, the decision also rendered DEP's motion to strike moot. (EHB op. of January 11, 2001, Atlantic's brief at Exhibit A.) Atlantic filed its amended notices of appeal on January 19, 2001 and January 22, 2001, respectively. (R.R. at 7.)

Atlantic adopted the position that the "Automatic Revocation Provisions" of the CO & A were void and unenforceable. (S.R.3b–4b, 32b–33b.) However, the EHB rejected this argument and, in a February 1, 2001 opinion and order, granted summary judgment in favor of DEP and dismissed Atlantic's appeals.[8]

Atlantic now appeals that decision to this court,[9] arguing that DEP lacked authority to enforce the Automatic Revocation Provisions of the CO & A.[10] We disagree.

DEP's principle argument in favor of summary judgment is that, as a matter of law, Atlantic's Permit and Surety Bond were revoked and forfeited automatically pursuant to the express terms of the CO & A's Automatic Revocation Provision. DEP points out that the last paragraph of the CO & A provides:

8. Atlantic filed a motion for reconsideration on February 27, 2001; however, by order dated February 28, 2001, the EHB denied this motion as untimely. (R.R. at 8.)

9. This court's scope of review of a decision by the EHB is limited to determining whether the EHB committed an error of law, violated constitutional rights, or whether substantial evidence supports its findings of fact. *Bethenergy Mines, Inc. v. Department of Environmental Protection*, 676 A.2d 711 (Pa.Cmwlth.), *appeal denied*, 546 Pa. 668, 685 A.2d 547 (1996). A grant of summary judgment by the EHB is proper where the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* On appeal from the entry of summary judgment, the appellate court may reverse the EHB where there has been an error of law or a clear or manifest abuse of discretion. *Fiore v. Department of Environmental Resources*, 96 Pa.Cmwlth. 477, 508 A.2d 371 (1986).

10. In the section of Atlantic's brief entitled "Statement of Questions Involved," Atlantic sets forth only a single issue; specifically, "[w]hether [DEP] can use its consent order procedure to bootstrap itself into having regulatory powers (here, the power to automatically revoke a permit without any exercise of agency discretion and without any right of review) which are not granted to [DEP] by statute?" (Atlantic's brief at 4.) However, elsewhere in its brief, Atlantic raises various other arguments. For instance, Atlantic argues that summary judgment was premature where further discovery may have revealed that Atlantic's CO & A violation was not sufficiently material to justify revocation of the Permit, that Atlantic's violation was justified

or that Atlantic should have been allowed to cure its violations. Atlantic also contends that revocation of the Permit due to a payment default is an unfair and excessive penalty because the CO & A does not provide for an excuse, cure period or waiver before imposing the penalty. However, we conclude that Atlantic has waived these additional arguments.

First, as noted, Atlantic failed to raise any of these issues in the Statement of Questions Involved portion of its brief, in violation of Pa. R.A.P 2116(a) (stating that, ordinarily, no point will be considered which is not set forth in the statement of questions involved or suggested thereby). Further, Atlantic failed to include the additional objections relating to materiality, cure and justification in its amended notices of appeal to the EHB. (*See* S.R. at 2b 4b; 31b 33b.) Issues not raised in agency proceedings are waived and cannot be considered for the first time in a judicial appeal. *S.T. v. Department of Public Welfare, Lackawanna County Office, Children, Youth & Family Services*, 681 A.2d 853 (Pa.Cmwlth. 1996), *appeal denied*, 547 Pa. 747, 690 A.2d 1165 (1997). Finally, although discussing the matters in prior paragraphs of the petition, (O.R., Atlantic's Amended Petition for Review, *see* generally, ¶¶ 8–9, 23–28, 35–42), Atlantic also failed to fairly raise these issues in the "Objections to the Determination" portion of its Amended Petition for Review filed with this court, as required by Pa. R.A.P. 1513(a). (*See* O.R., Atlantic's Amended Petition for Review, ¶¶ 43–63.) However, even if these issues were not waived, we are convinced by DEP's argument, that, once it is determined that the CO & A is valid and enforceable, these claims lack merit in light of the express, unambiguous language of the CO & A. (*See* DEP's brief at 20–24.)

that Atlantic consents to the entry of this [CO & A] as *a **final ORDER** of [DEP]*; and that Atlantic hereby *knowingly waives any right to appeal* this [CO & A] *or to challenge its content or validity*, which right may be available under Section 4 of the Environmental Hearing Board Act, Act of July 13, 1988, P.L. 530, No.1988–94, 35 P.S. § 7514; the Administrative Agency Law, 2 Pa. C.S. § 103(a) and Chapters 5A and 7A; or any other provision of law.

(R.R. at 31) (emphases added). DEP asserts that, through this express language, Atlantic agreed that the CO & A is to function as a final, unappealed and unappealable order of DEP, and, therefore, Atlantic cannot now challenge the content or validity of the CO & A. DEP also points out that Atlantic's concession to the finality of the CO & A is consistent with Pennsylvania case law. *See Department of Environmental Resources v. Landmark International, Ltd.,* 131 Pa.Cmwlth. 333, 570 A.2d 140 (1990) (holding that, because a consent order is the equivalent of a final, unappealed order, a collateral attack on the content or validity of a consent order in an enforcement proceeding is barred); *Department of Environmental Resources v. Bethlehem Steel Corporation,* 469 Pa. 578, 367 A.2d 222 (1976), *cert. denied, Bethlehem Steel Corporation v. Department of Environmental Resources,* 430 U.S. 955, 97 S.Ct. 1600, 51 L.Ed.2d 804 (1977) (holding that, because a consent order with the department is equivalent to an order from which no

timely appeal has been taken, such an order is enforceable by the court).

Although Atlantic approaches the issue from a variety of angles, the essence of its argument against summary judgment is that the "Automatic Revocation Provisions" in the CO & A are void *ab initio* and unenforceable because the CO & A gave DEP powers exceeding its statutory authority. Atlantic contends that the SWMA requires DEP to exercise discretion in imposing penalties; that is, DEP must consider all the factors and circumstances surrounding a violation to ascertain whether a particular penalty is appropriate or justified. Therefore, according to Atlantic, any provision that would impose *automatic* permit revocation is unlawful because it ignores the SWMA's requirement that DEP use discretion when imposing penalties. Atlantic argues that the EHB enforced this principle in an analogous setting in *Harriman* and erred by failing to rule similarly here. We cannot agree. In fact, *Harriman,* and the other EHB cases relied upon by Atlantic,[11] can be readily distinguished from the present case.

*Harriman* involved an appeal of certain conditions included in a surface mining permit issued by DEP to Harriman Coal Corporation (Harriman Coal). Harriman Coal moved for partial summary judgment, claiming that DEP erred by including certain special conditions in the permit, including special condition 21, which provided that the permit was valid only as long as Harriman Coal complied, fully and completely, with the requirements of a prior

11. Atlantic also cites three additional EHB decisions, *202 Island Car Wash v. DEP,* 1998 EHB 1325, *Wagner v. DEP,* 1999 EHB 681, and *Stull v. DEP,* 1999 EHB 728, all of which stand for the proposition that an automatic civil penalty assessment in an administrative order is arbitrary as a matter of law and, therefore, an abuse of DEP's discretion. In

deciding *Harriman,* the EHB relied on *202 Island Car Wash,* utilizing its reasoning that DEP "must consider the facts surrounding the violation itself, not just the facts underlying the order which gives [sic] rise to a violation," to calculate a reasonable penalty. *Harriman* at 19.

consent order and agreement with DEP. Under special condition 21, "[a]ny violation of any term of that Consent Order and Agreement, or of any of the terms of the mining plans contemplated and described [therein], shall automatically make this permit null and void." *Id.* at 9. Harriman Coal, like Atlantic here, took the position that DEP had no statutory or regulatory authority to declare a permit "automatically" null and void. The EHB agreed that there existed no statutory authority, either expressly conferred or necessarily implied, allowing DEP to automatically revoke a permit for any violation that may occur after the permit is issued, making "the automatic nature of the revocation in Condition 2 [its] most troublesome feature." *Id.* at 11. The EHB reasoned:

> Before we could conclude that [DEP] had the authority to include the automatic revocation provision based on the consent order, we would have to not only conclude that [DEP] had the authority to require the information required by the consent order; we would also have to conclude that the consent order gave [DEP] the authority to provide for automatic revocation of the permit if—at some point in the future—[Harriman Coal] fails to submit all of the information required. [DEP] points to no authority that stands for the latter proposition.

*Id.* Absent such authority,[12] the EHB concluded:

> Whether [DEP] is justified in revoking a permit for [Harriman Coal's] failing to comply with [the terms of the consent order and agreement] turns on the type of violation and the circumstances sur-

rounding it. [DEP] simply cannot reasonably determine that revocation is the appropriate sanction for a violation without knowing what the violation is or the surrounding circumstances. Therefore, [DEP] cannot include a permit condition that provides that any future violation will automatically revoke the permit.

*Id.* at 11–12. Accordingly, the EHB granted Harriman Coal's motion for partial summary judgment and struck special condition 21 from the permit. Here, Atlantic asserts that, as the next logical extension of the EHB's precedent in *Harriman,* we should ban automatic revocation provisions in consent orders as well as in permits. We disagree.

As recognized by the EHB, its decision in *Harriman,* and other cases dealing with the enforceability of automatic penalty provisions, invalidated *unilateral* DEP actions which dictated automatic consequences for subsequent violations, but the EHB had never considered application of this principle to a consent order and agreement. When the EHB did so, it rejected Atlantic's argument, employing reasoning that we believe to be compelling. As the EHB stated:

> A negotiated agreement with [DEP] is somewhat different than a direct action under a statute, such as the issuance of a permit or the assessment of a civil penalty. The contours of [DEP's] authority in the latter instances are explicitly defined by statute. In contrast, a consent order and agreement, is "merely an agreement between the parties. It is in essence a contract binding the parties thereto." *Commonwealth of Pennsylvania v. United States Steel Corp.*, 15 Pa.

---

12. In *Harriman,* the EHB took special care to point out that, because DEP failed to include the consent order and agreement in the record, the EHB could not consider any arguments DEP might make concerning the consent order. *Harriman* at 10. Therefore, *the EHB could not look to the consent order to see*

*if it provided DEP with authority to automatically revoke Harriman Coal's permit* in the event that Harriman Coal failed to satisfy the terms of the consent order. Obviously, that is not the case here where the CO & A was made part of the record before the EHB.

Cmwlth. 184, 325 A.2d 324, 328 (1974). As such, its enforceability is governed by principles of contract law, *Mazzella v. Koken,* 559 Pa. 216, 739 A.2d 531, 536 (1999), subject to any applicable statutory or constitutional limits on the enforcement of the contract. Accordingly, we should only modify its terms, which were negotiated by the parties, with great reluctance. See *U.S. Steel Corp.* (a court has no authority to modify or vary the terms of a consent decree absent fraud, accident or mistake).

Although the [EHB] disfavors automatic action by [DEP], after reviewing the [CO & A] we can divine nothing inherently illegal about the term in a consent agreement which provides for the automatic revocation of [Atlantic's Permit and Surety Bond.] Permitting decisions or the assessment of civil penalties are essentially unilateral actions on the part of [DEP], which is required to consider the unique circumstances of each case in order to reasonably exercise it [sic] discretion. In contrast, the terms of the [CO & A] are mutually assented to by both parties who together decided that the penalty was appropriate in the event [Atlantic] failed to comply with the civil penalty payment schedule. In reaching these terms, [DEP] was only constrained by the provisions of Section 602 of [the SWMA], which provides that orders of [DEP] must be "necessary to aid in the enforcement of the act." . . . . 35 P.S. § 6018.602. Once [DEP] exercises its discretion to determine that a consent agreement is the proper enforcement tool to utilize in a certain situation, there is nothing which would preclude it from agreeing with an appellant that certain specific acts will result in the revocation of a permit.

(EHB op. of February 1, 2001 at 4–5; S.R. at 42b–43b.) Finding no fraud, accident or mistake in the making of the CO & A, and noting that the CO & A protected Atlantic against an arbitrary decision in the event of a *force majeure,* the EHB concluded that DEP acted properly in rejecting Atlantic's request to extend the time for payment based on Atlantic's own failure to understand the CO & A and act in a timely fashion. (EHB op. of February 1, 2001 at 5–6; S.R. at 43b–44b.) We agree with this analysis and adopt it.

■  Moreover, we note that Atlantic appears to ignore the fact that DEP initially exercised its discretion regarding Atlantic's violations when it issued the Revocation Order on March 3, 1999. Atlantic could have pursued the prior litigation, i.e., its appeal of that Revocation Order, thereby forcing DEP to prove that its enforcement action was not an abuse of discretion; however, Atlantic chose instead to enter into the CO & A with DEP.[13] By taking this course of action, Atlantic obviated the need for the EHB to determine whether Atlantic's violations justified Permit revocation. In other words, Atlantic bargained away any arguments that its failure to submit Annual Operations Reports and to timely pay civil penalties justified Permit revocation, Facility closure and Surety Bond forfeiture.

Accordingly, we affirm.

---

13.  We do not sympathize with Atlantic's argument that it had no choice but to enter the CO & A. Atlantic's claim that this was the only means it had to resume operations ignores the fact that, despite the violations prompting DEP to revoke Atlantic's Permit on March 3, 1999, Atlantic was permitted to remain operational under a temporary supersedeas. Atlantic might have continued such operation, and DEP might have discontinued its Permit revocation proceedings against Atlantic; however, Atlantic itself prevented such an outcome. Because Atlantic continued its violations during the temporary supersedeas period, DEP refused to withdraw its Revocation Order and the EHB refused to extend the supersedeas; this, in turn, led directly to the CO & A.

## ORDER

AND NOW, this 11th day of December, 2001, the order of the Environmental Hearing Board, dated February 1, 2001, is hereby affirmed.