SAYREVILLE SEAPORT ASSOCI-
ATES ACQUISITION COMPANY,
LLC t/a Sayreville Seaport Associates,
L.P., Petitioner,

v.

DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 16, 2012.

Decided Nov. 15, 2012.

Ordered Published Feb. 14, 2013.

Neil S. Witkes, Bala Cynwyd, for petitioner.

Susan M. Seighman, Assistant Counsel, Curtis C. Sullivan, Assistant Counsel, Harrisburg, and Lance H. Zeyher, Regional Counsel, Wilkes–Barre, for respondent.

BEFORE: LEADBETTER, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEADBETTER.

Sayreville Seaport Associates Acquisition Company, LLC petitions for review of the adjudication of the Environmental Hearing Board (Board), which vacated two opinions of the Department of Environmental Protection (Department) stating that Sayreville was precluded by statute and regulation from either disposing of soil with radioactive concerns or beneficially using it as regulated fill. Because neither opinion constitutes an appealable decision or action under the Environmental Hearing Board Act (Act),[1] we vacate the Board's adjudication and remand with instructions to quash the appeals.

Sayreville is redeveloping an industrial site in New Jersey. As part of its redevelopment efforts, Sayreville needs to excavate, remove and dispose of approximately 60,000 cubic yards of radioactive soil left

1. Act of July 13, 1988, P.L. 530, *as amended,* 35 P.S. §§ 7511–7516.

behind by the former industrial operations.[2] The New Jersey Department of Environmental Protection (NJ DEP) issued a Radioactive Materials License for the soil, thereby imposing various conditions upon its packaging, handling and disposal, including the requirement that disposal of the soil take place at a licensed low-level radioactive waste site unless the NJ DEP approved an alternative plan. Sayreville engaged in various discussions, communications and meetings with our Department of Environmental Protection about the possible disposal or beneficial use of the soil in Pennsylvania. The plans under consideration included disposal of the soil at a Cumberland County landfill (Landfill) or beneficial use of the soil as regulated fill[3] at an abandoned mine site under reclamation (referred to as the Hazleton Creek Property or HCP).

2. It appears to be undisputed that the soil contains naturally occurring radioactive material (NORM) and technologically enhanced naturally occurring radioactive material (TE-NORM). "NORM" is defined as a "nuclide which is radioactive in its natural physical state-that is, not manmade-but does not include source or special nuclear material." 25 Pa.Code § 287.1. Specifically, the soil is estimated to contain an average concentration of 50 picocuries per gram of uranium–238 and 30 picocuries per gram of thorium–232. A "curie" is a unit of radioactivity; it indicates the number of radioactive atoms that are giving off radiation. A "picocurie" is one trillionth of a curie. "Picocurie per gram" refers to the amount of radioactivity in a particular solid substance. According to the Commonwealth, "[t]o place these radiation levels into context, for uranium–238 and thorium–232, the Environmental Protection Agency's [] clean up criteria for unrestricted use requires a site to be remedied to a level which is certainly less than five picocuries per gram." Commonwealth's appellate brief at 7.

3. "Regulated fill" is defined by the Department's General Permit for Processing/Beneficial Use of Residual Waste (Permit No. [WMGR096]) as:

The Landfill, working with Sayreville, formally sought Department approval to accept the contaminated soil.[4] The Department initially approved the Landfill's request on May 24, 2010; however, that approval was subsequently rescinded by letter dated July 14, 2010.[5] Sayreville did not appeal the rescission and apparently Landfill did not either. On that same day, July 14, the Department's Division of Municipal and Residual Waste sent Sayreville a letter that stated as follows:

This letter is in response to your June 30, 2010, email ... in follow up to our June 16, 2010, meeting. The e-mail concerned the status of the Form U proposal to send contaminated soil [to Landfill] and the potential of sending the contaminated soil to the Hazleton Creek Property (HCP) site for use as regulated fill.

soil, rock, stone, dredged material, used asphalt, historic fill, and brick, block or concrete from construction and demolition activities that is separate from other waste and recognizable as such that has been affected by a spill or release of a regulated substance and the concentrations of regulated substances exceed the values in Table FP–1 (a) and (b) of the Department's fill policy.

Reproduced Record (R.R.) at 15a.

4. In general, a landfill is required to file a "Form U" in order to accept a new stream of waste. Landfill filed a Form U with the Department seeking approval to accept Sayreville's soil.

5. In rescinding approval, the Department noted that the initial approval was contingent upon review of the "radiological characteristics and anticipated public dose received from the waste once in place [at the Landfill]." R.R. at 1045a. The Department further opined that the radiological data that was submitted "does not demonstrate that the [Landfill] can safely take the waste in accordance with its Radiation Protection Action Plan, and the Department's regulations and guidance." *Id.*

The Department ... considered the Form U proposal ... and disapproved the proposal. I have attached a copy of the disapproval notice [that was sent to Landfill] for your information.

Regarding your other request, the Department believes that this contaminated soil cannot be accepted by HCP or any other facility approved to beneficially use waste materials as regulated fill under the Department's residual waste general permit WMGR096 or as clean fill pursuant to the Department's Management of Fill Policy. Environmental due diligence performed on this waste identified concerns related to naturally occurring radioactive material (NORM) and technologically enhanced naturally occurring radioactive material (TE-NORM). The beneficial use of waste with radioactive concerns as regulated fill or clean fill may adversely effect [sic] human health or the environment, and therefore the Department's Fill Management Policy does not apply.

If you have any further questions or comments concerning this subject, please contact [the Department].

Reproduced Record (R.R.) at 1044a; *see also* Board's Adjudication at 2–3, Finding of Fact No. 9 (quoting July 14, 2010 letter). Sayreville timely appealed this letter. On December 23, 2010, the Department's Bureau of Radiation Protection sent Sayreville a second letter regarding the contaminated soil, which stated:

We have recently learned that Sayreville's contaminated soil is licensed in New Jersey under [a] Radioactive Materials License [ ]. Such NRC or Agreement State licensed radioactive material is low-level radioactive waste ("LLRW"), as defined in Section 103 of the Low–Level Radioactive Waste Disposal Act [the Act] (35 P.S. § 7130.103), as well as 25 Pa.Code § 236.2. Pennsylvania statutes and regulations prohibit the disposal of such licensed radioactive material at facilities that are not licensed to accept [LLRW] pursuant to the [Act] at 35 P.S. § 7130.102(13) and 25 Pa.Code Chapter 236. This includes municipal waste landfills and other "shallow land burial" scenarios.

Prohibitions for the placement of LLRW are also contained in the Department's municipal and residual waste regulations. Specifically, § 273.201(i) of the municipal waste regulations prohibits LLRW that is controlled under a specific or general license authorized by any Federal, State or other government agency from being disposed in a municipal waste landfill, unless specifically exempted from disposal restrictions by an applicable Pennsylvania or Federal statute or regulation. 25 Pa.Code § 273.201. Additionally, § 287.2(h) of the residual waste regulations provides that the management and disposal of LLRW shall be regulated under Chapter 236 (relating to [LLRW] management and disposal) instead of this article. 25 Pa. Code § 287.2

Therefore, the contaminated soil, which is LLRW, is barred from disposal or beneficial use in the Commonwealth....

R.R. at 1082a; *see also* Board's Adjudication at 3–4, Finding of Fact No. 10 (quoting December 23, 2010 letter). Sayreville appealed this letter as well and the two appeals were eventually consolidated before the Board.[6]

6. On January 31, 2011, the Department wrote a third letter to Sayreville, indicating that it was withdrawing its July 14 letter regarding the beneficial use of the contaminated soil as regulated fill and that the "operative letter in this matter is now the December 23, 2010, letter.... [which] supersedes and replaces the

The Department moved to quash the appeal from the July 14 letter, contending that it was not an appealable action. The Board denied the motion, concluding that the letter indicated both that the Department had considered Sayreville's request on the merits and that beneficial use of the soil was prohibited, and that the Department's opinion was stated with finality, lacking any suggestion or direction of further consideration.

Following the hearing, while the Board confirmed its earlier conclusion that the letters were appealable decisions, it concluded that the matter was not ripe for review because both parties had by-passed the applicable regulatory framework necessary for a review on the merits.[7] Specifically, the Board noted that the procedures set forth in the general permit for new waste streams at the HCP site had not been followed, that HCP was required to seek approval if it wanted to use the material and it was not even clear that HCP wanted the material. The Board opined:

> Sayreville's idea is that its radioactive waste can be managed at the Hazleton site under HCP's authorization to operate under the Department's general permit for the beneficial use of residual waste as fill material (GP 096). The problem is that the applicable procedures established in HCP's general permit regarding a new waste stream have not been followed.
>
> In order to accept a new waste stream such as Sayreville's radioactive soil, HCP must provide to the Department documentation relating to the source location, the physical and chemical description of the regulated fill material, the sampling methodology and summary, the laboratory analytical results, and certification by HCP that the material meets applicable concentration limits.... The Department may instruct the permittee that a particular waste is disapproved, or presumably, impose conditions or requirements on its use. It may also require the permittee to obtain an individual permit.... All activities must be capable of being conducted in accordance with the permittee's application and the approval thereof.
>
> Instead of adhering to these permit provisions, Sayreville and the Department have engaged in a series of private meetings and discussions that has resulted in two letters that do little more than express legal opinions. This is not an acceptable substitute for following proper procedures.

Board's Adjudication at 6–7 (citations to record omitted and emphasis added). The Board noted that any ruling would be advisory only and would not relate to any particular site or use.[8] Accordingly, the Board sustained the appeals and vacated the Department's letters as premature, noting that Sayreville was not barred from pursuing proper procedures to secure Departmental approval of its request to use the contaminated soil. This appeal followed.

July 14th letter." Board's Opinion and Order on Second Motion to Dismiss at 3.

7. The Board also noted that the denial of Landfill's Form U was not before it.

8. The Board further observed that HCP had not made any specific proposals or commitments and there had not been any discussion of worker or community safety. According to the Board: "The airborne concentration limits for uranium and thorium are extremely restrictive. There are no institutional controls at the HCP site that are remotely [comparable] to controls at a low level radioactive waste disposal facility. There are homes immediately outside the border of the HCP site." Board's Adjudication at 8 n.2 (citations to record omitted).

On appeal, Sayreville disagrees with the Board's conclusion that the instant matter is not ripe for review. Citing the factors outlined in *Philips Brothers Electrical Contractors, Inc. v. Pennsylvania Turnpike Commission,* 960 A.2d 941, 946 (Pa. Cmwlth.2008), an opinion that discusses the doctrine of ripeness in determining whether a bid protest was premature, Sayreville argues that the Board erred in failing to reach the merits of the issues before it.[9] In *Philips,* the court noted that in determining whether a matter is sufficiently ripe for judicial review, the court should consider whether the issues are adequately developed and whether the parties will suffer hardship if review is delayed. According to Sayreville, the Department's determination that the contaminated soil cannot be disposed of or used as regulated fill in Pennsylvania rests primarily on the existence of the NJ DEP Radioactive Materials License, and the legal effect or impact of that license is a discrete issue ripe for adjudication. Sayreville also argues that the legality of the Department's determination is a question of law requiring little fact-finding. Sayreville further maintains that the Department's determination that the presence of radiological constituents in the soil completely precludes use of the soil as regulated fill in

Pennsylvania is sufficiently developed for Board and judicial review. HCP's interest in the soil is not necessary to resolve the issue Sayreville contends because the Department's determination was not site-specific. Essentially, Sayreville is asking the Board to construe the authorization given under the Department's general permit as a matter of law.[10]

In response, the Department contends that the Board correctly determined that this matter is not yet ripe for review, rendering any decision merely advisory. It notes that contrary to the procedure established in the Department's general permit, HCP has not applied to beneficially use the soil at the mine site and Sayreville has not sought its own permit to use the soil. Consequently, the information necessary to evaluate and technologically review whether the soil can safely be used as fill has not been provided.[11]

While the doctrine of ripeness and the Board's statutory jurisdiction to hear specific appeals share a similar foundation, both requiring a formalized decision affecting parties in a concrete way, we need not discuss Sayreville's arguments regarding ripeness because it is clear that the Department's opinions do not constitute appealable actions within the Board's juris-

9. The court described the doctrine as follows:

The doctrine of ripeness arises out of a judicial concern not to become involved in abstract disagreements of administrative policies. The doctrine insists on a concrete contest, where there is a final agency action so that the courts can properly exercise their function. Court rulings applying the ripeness doctrine are premised on policies of sound jurisprudence; courts should not give answers to academic questions, render advisory opinions, or make decisions based on assertions of hypothetical events that might occur in the future.

*Philips,* 960 A.2d at 945 (citations omitted). *See also Bayada Nurses, Inc. v. Common-*

*wealth, Dep't of Labor & Indus.,* 607 Pa. 527, 8 A.3d 866 (2010).

10. Sayreville also argues the merits of these two issues, taking the position that the New Jersey Radioactive Materials License does not serve to bar the disposal or beneficial use of the soil in Pennsylvania and that the general permit cannot be interpreted and applied to absolutely preclude the beneficial use of soil containing radioactive elements.

11. According to the Department, the formal permit process provides the general public with notice and an opportunity to be heard regarding use of the soil at the mine site.

diction.[12]

Pursuant to the Act, the Board has the authority to hold hearings and issue adjudications on "orders, permits, licenses or decisions of the department" and may review any "action" taken by the Department. Section 4(a), (c) of the Act, 35 P.S. § 7514(a), (c). While "decision" is not defined by the Act or regulations, "administrative agency laws generally refer to the term 'decision,' as including a determination which can be classified as quasi-judicial in nature and which affects rights or duties." *Commonwealth, Dep't of Envtl. Res. v. New Enterprise Stone & Lime Co., Inc.*, 25 Pa.Cmwlth. 389, 359 A.2d 845, 847 (1976) (citing 1 Am.Jur.2d Administrative Law § 138). An "action" is defined by the applicable regulations, however, as an "order, decree, decision, determination or ruling by the Department affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of a person including, but not limited to, a permit, license, approval or certification." 25 Pa. Code § 1021.2. Based thereon, this court has held that Departmental communications that do not affect a party's personal or property rights, remedies, or avenues of redress are not appealable actions. *See generally Pickford v. Dep't of Envtl. Prot.*, 967 A.2d 414 (Pa.Cmwlth.2009); *Commonwealth, Dep't of Envtl. Prot. v. Schneiderwind*, 867 A.2d 724 (Pa.Cmwlth.2005). *See also Commonwealth, Dep't of Envtl. Res. v. New Enterprise Stone & Lime Co.*, 359 A.2d 845. More specifically, in *Sandy Creek Forest, Inc. v. Commonwealth, Department of Environmental Resources*, 95 Pa.Cmwlth. 457, 505 A.2d 1091, 1093 (1986), this court noted that a letter from an agency stating the requirements of the law was not a final action or adjudication

subject to appeal. Finally, the Board is not empowered to render declaratory relief. *Costanza v. Dep't of Envtl. Res.*, 146 Pa.Cmwlth. 588, 606 A.2d 645 (1992).

Here, the Department's July and December letters do not grant or deny a pending application or permit, and they do not direct Sayreville to take any action nor impose any obligations on the company. Rather, the letters are best characterized as advisory opinions, expressing the Department's understanding of Pennsylvania law. Indeed, as the December letter demonstrates, the Department was not even in possession of all relevant facts when its initial letter issued. (*See* letter of December 23, 2010, stating, "We have recently learned that Sayreville's contaminated soil is licensed in New Jersey. . . .").

While the Department's position may not actually change from that expressed above, as of yet, neither Sayreville nor HCP have followed the formal regulatory process required to seek approval to beneficially use the soil and, therefore, the Department has not yet adversely affected Sayreville's personal or property rights, privileges, duties or obligations. Accordingly, those letters do not constitute appealable actions, triggering the Board's jurisdiction; the appeals should have been quashed.

Based on the foregoing, the Board's adjudication is vacated and the matter is remanded with instructions to the Board to quash the appeals.

### ORDER

AND NOW, this 15th day of November, 2012, the adjudication of the Environmental Hearing Board (Board) in the above-captioned matter is hereby VACATED

---

**12.** If we did undertake a discussion of ripeness, however, we would agree with the Board that the matter is not ripe for review.

and the matter is REMANDED to the Board to quash the appeals.

