**CHESAPEAKE APPALACHIA, L.L.C., Petitioner**

**v.**

**DEPARTMENT OF ENVIRONMENTAL PROTECTION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 10, 2014.

Decided April 3, 2014.

Anthony R. Holtzman and Craig P. Wilson, Harrisburg, for petitioner.

Geoffrey J. Ayers, Regional Counsel, Williamsport, for respondent.

BEFORE: PELLEGRINI, President Judge, and BROBSON, Judge, and COLINS, Senior Judge.

OPINION BY Judge BROBSON.

Chesapeake Appalachia, L.L.C. (Chesapeake), petitions this Court for review of an order of the Environmental Hearing Board (EHB), granting summary judgment in favor of the Department of Environmental Protection (Department) and dismissing Chesapeake's appeal of a December 23, 2012 letter (Letter) issued by the Department. We affirm.

Following a rash of natural gas leaks into various drinking water supplies and surface waters of the Commonwealth over the course of nine months in 2010, Chesapeake and the Department entered into a consent order and agreement (COA) on May 16, 2011. (R.R. 42a–50a.) The COA addresses Chesapeake's operational and remedial responsibilities with respect to 116 gas wells, 17 private drinking water supplies, and various surface waters of the Commonwealth. (R.R. 42a–43a.)

The COA conveys the parties' desire to avoid litigation and intent to be legally bound and provides that Chesapeake "consents to the entry of this Consent Order and Agreement as a final Order of the Department; and that Chesapeake hereby knowingly waives its rights to appeal this Consent Order and Agreement and to challenge its content or validity." (R.R. 64a.) Paragraph 3.a. of the COA provides that Chesapeake "shall submit to the Department, for review and approval," a corrective action plan (CAP) which "identifies the actions Chesapeake shall take to analyze each and every gas well identified for evaluation ..., and recommendations for the rehabilitation work necessary to control and mitigate shut-in surface casing pressure and stray gas from those wells."

(R.R. 51a–52a.) In paragraph 9, Chesapeake further agreed:

> With regard to any document that Chesapeake is required to submit pursuant to this Consent Order and Agreement, the Department will review Chesapeake's document and will approve, modify or disapprove the document, or a portion thereof, in writing.... Upon approval by the Department, the document, and any schedule therein, shall become a part of this Consent Order and Agreement for all purposes and shall be enforceable as such.

(R.R. 59a.) Lastly, in Paragraph 24, Chesapeake agreed that

> any decision which the Department makes under the provisions of this Consent Order and Agreement, ... is intended to be neither a final action under 25 Pa.Code § 1021.2, nor an adjudication under 2 Pa.C.S. § 101. Any objection which Chesapeake may have to the decision will be preserved until the Department enforces this Consent Order and Agreement.

(R.R. 63a.)

On July 11, 2011, in accordance with the COA, Chesapeake submitted its CAP to the Department. The Department responded to Chesapeake's CAP in three letters dated August 17, 2011, December 2, 2011, and December 23, 2011. (R.R. 83a–84a, 86a, 88a.) Each of the letters modified the CAP and approved the CAP as modified. Each of the successive letters provided that it "supersedes and replaces" the previous letter, which "shall have no further effect." (R.R. 86a, 88a.) Chesapeake separately appealed each of the letters to the EHB. (R.R. 5a, 11a, 16a.) EHB consolidated the three appeals, and the Department filed a motion for summary judgment. (R.R. 22a, 24a.)

After briefing and an *en banc* oral argument, EHB issued an order granting summary judgment in favor of the Department and dismissing all three appeals. Specifically, EHB concluded that it lacked jurisdiction over Chesapeake's appeal because: (1) the decisions of the Department under the COA are not intended to be final actions or appealable adjudications and, therefore, have no administrative finality; (2) the Letter does not otherwise constitute a final action because it does not affect Chesapeake's property rights, privileges, liabilities, or obligations, and (3) the COA does not impermissibly alter the jurisdiction of the EHB. Chesapeake then filed a petition for review in this Court.[1]

On appeal,[2] Chesapeake argues that the EHB erred in concluding that the Letter was not an appealable "action" under the Environmental Hearing Board Act (Act)[3] and its applicable regulations, and that EHB erred in concluding that the terms of the COA could convert an otherwise appealable action into a non-appealable action, because such a conversion would impermissibly alter the jurisdiction of the EHB. The Department argues that the Letter is not an "action" and that the terms of the COA do not impermissibly alter the jurisdiction of the EHB because the Letter is not a final "action." In the alternative, the Department argues that even if the Letter was otherwise appealable, the terms of the COA preclude its appeal at this time.

There is "no bright line rule" for what constitutes an "action" of the Department. *HJH, LLC v. Dep't of Envtl. Prot.*, 949 A.2d 350, 353 (Pa.Cmwlth.2008). Title 25, Chapter 1021 of the Pennsylvania Code, relating to practice and procedures before the EHB, defines the term "action" as an "order, decree, decision, determination or ruling by the Department affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of a person including, but not limited to, a permit, license, approval or certification." 25 Pa.Code § 1021.2(a). Thus, although it is "conceivable" that a letter from the Department could constitute an "action," *see Standard Lime & Refractories Co. v. Department of Environmental Resources*, 2 Pa.Cmwlth. 434, 279 A.2d 383, 385 (1971), communications from the Department that "do not affect a party's personal or property rights, remedies, or avenues of redress are not appealable actions." *Sayreville Seaport Assocs. Acquisition Co. v. Dep't of Envtl. Prot.*, 60 A.3d 867, 872 (Pa.Cmwlth. 2012).

Chesapeake's first argument is that the Letter meets the definition of an "action" under the Act and its applicable regulations because it "decided the equivalent of a permit application." (Pet'r Br. at 11.)

---

**1.** Only the December 23, 2011 letter (Letter) is at issue before this Court because Chesapeake does not challenge the EHB's conclusion that the Department's previous two letters are moot in the face of the December Letter's proclamation that it "supersedes and replaces" the previous letters.

**2.** This Court's scope of review of a decision by the EHB is limited to determining whether the EHB committed an error of law, violated constitutional rights, or whether substantial evidence supports its findings of fact. A grant of summary judgment is proper where the pleadings, depositions, answers to interroga-

tories and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. On appeal from an entry of summary judgment, this Court may reverse the EHB if there has been an error of law or a manifest abuse of discretion. *Global Eco–Logical Servs., Inc. v. Dep't of Envtl. Prot.*, 789 A.2d 789, 793 n. 9 (Pa.Cmwlth.2001).

**3.** Act of July 12, 1988, P.L. 530, *as amended*, 35 P.S. §§ 7511–7516.

Chesapeake does not elaborate upon this assertion and cites no case law to support it. We are not persuaded by Chesapeake's bald assertion that this Letter is the equivalent of a permit application and decision.

■ Chesapeake further argues that the Letter is an "action" because it affects Chesapeake's obligations by requiring Chesapeake to take certain actions. Chesapeake seems to argue that the Letter imposes upon it new obligations, based upon the fact that the Letter approves as modified the CAP Chesapeake submitted. This argument, however, ignores the broader factual background of the case. Chesapeake is already obligated, by the terms of the COA that it voluntarily executed, to identify, evaluate, and perform remedial work upon all the effected wells. (R.R. 51a–59a.) This work is, in fact, the entire point of the CAP, which Chesapeake was required to submit and carry out under the terms of the COA. This Court has previously held that a letter which "merely affirm[s] the status quo" is not a decision from which an appeal may be taken. *Pickford v. Dep't of Envtl. Prot.*, 967 A.2d 414, 420 (Pa.Cmwlth.2008). Here, the Letter delineates Chesapeake's already existing obligations and, thus, does not constitute an "action." *Id.; see also Sayreville*, 60 A.3d at 872 (holding letter advising party as to legality of its potential future actions was not an "action"); *Alternate Energy Store, Inc. v. Dep't of Envtl. Res.*, 107 Pa.Cmwlth. 66, 527 A.2d 1077, 1079 (1987) (holding letter advising permit applicant of status of application was not an "action"); *Standard Lime*, 279 A.2d at 386 (holding letter advising party of its non-compliance with previous order was not an adjudication); *but cf. Gateway Coal Co. v. Dep't of*

*Envtl. Res.*, 41 Pa.Cmwlth. 442, 399 A.2d 802, 805 (1979) (holding letter stating petitioner's proposal was "contrary to law" constituted final decision).

Lastly, Chesapeake argues that the Letter constituted an "action" because the Letter could become enforceable against Chesapeake under the terms of the COA and thus affect its liabilities. In Paragraph 9, the COA provides that "[u]pon approval by the Department, [the CAP], and any schedule therein, shall become a part of this Consent Order and Agreement for all purposes and shall be enforceable as such." (R.R. 59a.) Thus, it is the CAP, not the Letter, which becomes enforceable against Chesapeake under the COA, and even then, it does not affect Chesapeake's liabilities until the Department brings an enforcement action against Chesapeake. (R.R. 63a.) It is at that point—when the Department brings an enforcement action against Chesapeake—that Chesapeake may defend by challenging the conditions imposed by the Department.[4] *Fiore v. Dep't of Envtl. Res.*, 98 Pa.Cmwlth. 35, 510 A.2d 880, 883 (1986) (holding that notice of violation is not appealable action even if such notice might affect future rights because "even if Fiore is correct in his assertion that the notice of violation would ineluctably lead to the denial of a renewed waste disposal permit, such denial would be the correct point at which to appeal, in the course of which the opportunity would be had to demonstrate that the violations were erroneously found").

Because the Letter does not affect Chesapeake's rights, obligations, or liabilities, the Letter does not constitute an "action"

---

4. By virtue of the COA, Chesapeake has two options if it does not agree with the modifications to the CAP contained in the Letter: it may either comply or refuse to comply, and then challenge the Letter as part of its defense

in any enforcement action brought by the Department. We do not mean to imply, and certainly do not hold, that Chesapeake, under the terms of the COA, has forever waived its right to challenge the Letter.

under 25 Pa.Code § 1021.2(a). Because we have concluded that the Letter is not a final action, we need not reach the merits of Chesapeake's second argument, as it depends upon us first concluding that the Letter was an action. We also need not reach the merits of the Department's argument in the alternative, as our conclusion is sufficient to affirm the decision of the EHB.

Accordingly, the order of the EHB is affirmed.

### ORDER

AND NOW, this 3rd day of April, 2014, the order of the Environmental Hearing Board is AFFIRMED.