**DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
Petitioner,**

v.

**NORTH AMERICAN REFRACTORIES
COMPANY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 2001.
Decided Feb. 8, 2002.

Craig S. Lambeth, Harrisburg, for petitioner.

Robert L. Byer, Pittsburgh, for respondent.

Before SMITH–RIBNER, Judge, PELLEGRINI, Judge, and MIRARCHI, Jr., Senior Judge.

SMITH–RIBNER, Judge.

The Department of Environmental Protection (Department) petitions for review of an order of the Environmental Hearing Board (EHB) that sustained the appeal of North American Refractories Company (North American) and remanded its emission reduction credit (ERC) registry application to the Department for consideration on the merits. The EHB concluded that the Department erroneously denied North American's application based upon the Department's misinterpretation of a one-year deadline for applications set forth in 25 Pa.Code § 127.207(2). The EHB, however, stated in its opinion that the Department's interpretation of the regulation was reasonable. The principal issue in this appeal is whether the EHB must defer to the Department's interpretation of Department regulations when it determines that the interpretation is reasonable.

I

The EHB and the Department are two branches of the tripartite administrative structure that governs environmental regulation in Pennsylvania. The third branch of that structure is the Environmental Quality Board (EQB). The Department is the executive branch, assigned various duties to implement and enforce environmental statutes and regulations. *See, e.g.,* Section 4 of the Air Pollution Control Act, Act of January 8, 1960, P.L. (1959) 2119, *as amended,* 35 P.S. § 4004. The EHB is the judicial branch, empowered to hold hearings and issue adjudications on orders, permits, licenses or decisions of the Department. Section 4 of the Environmental Hearing Board Act (EHB Act), Act of July 13, 1988, P.L. 530, 35 P.S. § 7514. Section 3(a) of the EHB Act, 35 P.S. § 7513(a), describes the EHB as "an independent quasi-judicial agency." The EQB is the legislative branch, responsible for developing a master environmental plan for Pennsylvania and empowered to formulate, adopt and promulgate rules and regulations for the Department. It is comprised of representatives from a plethora of organizations, including representatives from the Department.[1]

---

1. Sections 471 and 1920–A of The Administrative Code of 1929, Act of April 9, 1929, P.L.

This litigation arises from Pennsylvania's measures to prevent the formation of ozone. ERCs are a critical element of the New Source Review program that Pennsylvania adopted in response to the 1990 amendments to the federal Clean Air Act, *as amended,* 42 U.S.C. §§ 7401–7671q. ERCs are the currency in a market-based strategy to control the emission of air pollutants. When a business ceases to operate equipment that emits a pollutant, reduces or curtails operation of such equipment or installs more new emission controls than required by law, the business may apply for ERCs. The business may use the ERCs to offset emission increases at a new or modified facility or may trade the ERCs to another facility for use as emission offsets, and therefore ERCs have significant value. However, before ERCs may be used, they must be approved, certified and placed in a registry system by the Department. The root of the instant dispute concerns when the one-year deadline for an ERC registry application begins to run. The Department contends that the deadline begins to run when the relevant emissions reduction occurs. The EHB and North American contend that the deadline does not begin to run until the emissions reduction becomes permanent.

North American's ERC registry application requested ERCs for the shutdown of one of the two tunnel kilns at its brick refractory plant in Womelsdorf, Lebanon County. A tunnel or "continuous" kiln is "a long narrow kiln which is hottest at its middle portion and through which ware travels on cars or conveyor." Webster's Third New International Dictionary 494 (1993). The No. 1 tunnel kiln at the Womelsdorf plant was constructed in 1969, and the No. 2 tunnel kiln was constructed in 1974. From 1993 through 1997, the No. 1 tunnel kiln was used intermittently due to market conditions. When the No. 1 tunnel kiln was restarted in March 1997, the No. 2 tunnel kiln was taken down for a planned rebuild. That rebuild commenced in April 1997, but the rebuild ceased in July 1997 when North American began evaluating whether it should move the operations to its Becanour, Quebec facility.

In October 1998 North American decided to cancel the rebuild and permanently shut down the No. 2 tunnel kiln, and the kiln has not been operated since March 1997. North American filed its ERC application on August 26, 1999. The Department denied the ERC application as untimely based upon 25 Pa.Code § 127.207(2) because the application was filed more than one year after North American shut down the No. 2 tunnel kiln. Section 127.207(2) provides as follows:

> For facilities subject to this subchapter, an ERC registry application shall be submitted to the Department within 1 year of the initiation of an emissions reduction used to generate ERCs. Facilities or sources not subject to this subchapter shall submit a registry application and receive Department approval prior to the occurrence of an emissions reduction.

In its appeal to the EHB, North American argued that its August 1999 application was timely because the application was filed within one year of the October 1998 date when it decided that the shutdown would be permanent.

After conducting a two-day evidentiary hearing, the EHB determined that the Department's interpretation of Section

---

177, *as amended,* added by Sections 14 and 20 of the Act of December 3, 1970, P.L. 834, 71

P.S. §§ 180–1 and 510–20.

127.207(2) was reasonable, but the EHB also determined that North American had advanced a reasonable alternative interpretation. The EHB stated as follows:

> There is no question in our minds that Section 127.207(2) is reasonably capable of being understood in at least two different ways. The regulation could mean that *any* actual reduction in emissions triggers the one-year period. The regulation could mean that only an emissions reduction that may be 'used to generate ERCs' triggers the one-year period. We view both interpretations advanced by the parties as reasonable.

EHB's opinion, at pp. 8–9.

The EHB rejected the Department's argument that the EHB must follow the Department's interpretation unless that interpretation is clearly erroneous. To the extent that the EHB had previously applied such a standard, the EHB overruled the applicable portion of those cases. The EHB recognized that "[t]he Department is frequently more knowledgeable than any other party and its interpretation is entitled to great weight." *Id.* at p. 10. Nevertheless, the EHB determined that the Department's interpretation was due no greater deference than the interpretation of any other party. The EHB wrote: "The Department's proposed interpretation is very important to us, *but so is an appellant's or any other party's for that matter.*" *Id.* at p. 9 (emphasis added).

■ After finding inconsistencies in the testimony it heard from Department employees involved in the drafting process, the preamble to the regulations and the manner in which the Department had implemented the regulation, the EHB turned to considerations of reasonableness and policy to interpret the regulation. The EHB noted that Section 127.207(5) requires that an emissions reduction be "permanent" before it can be used to generate ERCs. The EHB reasoned that requiring an operator to apply for ERCs before the operator has decided to make the emissions reduction permanent would be unreasonable because the application could not possibly succeed. In terms of policy, the EHB determined that it should prefer an interpretation that favors the creation of ERCs, and consequently it accepted North American's argument as more convincing than the Department's argument. The EHB concluded that the application was filed within one year of the date when North American committed "to initiate an emissions reduction technique that would support a successful ERC application," i.e., within one year of the date when North American decided to permanently shut down the No. 2 tunnel kiln. *Id.* at p. 23. Two judges filed dissenting opinions, including the chair of the EHB.[2]

## II

■ Well-settled precedent establishes that courts defer to an administrative agency's interpretation of its own regulations unless that interpretation is unreasonable. *Pelton v. Department of Public Welfare*, 514 Pa. 323, 523 A.2d 1104 (1987). The task of the reviewing court is limited to determining whether the agency's interpretation is consistent with the regulation and with the statute under which the regulation was promulgated. *Id.* The United States Supreme Court has referred to this deference as the interpretive lawmaking power of administrative agencies and has characterized it as a "necessary adjunct"

---

**2.** The Court's review of an order of the EHB is limited to determining whether the EHB's findings are supported by substantial evidence and whether constitutional violations or errors of law were committed. *Westinghouse Electric Corporation v. Department of Environmental Protection*, 745 A.2d 1277 (Pa.Cmwlth. 2000).

of the authority to promulgate and enforce regulations. *Martin v. Occupational Safety and Health Review Commission*, 499 U.S. 144, 152, 111 S.Ct. 1171, 1176, 113 L.Ed.2d 117, 129 (1991). The dispute in this case concerns whether the Department or the EHB ought to possess the power to authoritatively interpret environmental regulations.

In *Martin* the United States Supreme Court confronted the same issue that is currently before this Court: the Supreme Court had to decide to whom a reviewing court ought to defer when two actors, assigned different roles by statute, furnish reasonable but conflicting interpretations of an ambiguous regulation. The statute at issue in *Martin* assigned one actor responsibility for rule-making and enforcement functions (administrative actor). A different actor was assigned responsibility for adjudicative functions (adjudicative actor). After analyzing legislative intent and the reasons for granting deference to an administrative agency's interpretation of its own regulations, the Court concluded that the legislature did not intend the adjudicative actor to possess authoritative interpretive powers.

█ North American correctly notes that the administrative structure at issue in this case is significantly different from the administrative structure at issue in *Martin*, because in the instant case the rule-making authority has been separated from the enforcement authority. Nevertheless, *Martin* provides relevant guidance to this Court in three key ways. First, the Supreme Court applied a presumption against the adjudicative actor. Second, the Court concluded that Congress did not intend the adjudicative actor to play a policy-making role. Third, the Court did not hold that authoritative interpretive powers were necessary for a tribunal of

the first instance to conduct meaningful review.

The reasoning that the Supreme Court provided for its presumption that Congress intended the administrative actor to possess authoritative interpretative power equally suggests that this Court should presume that the General Assembly intended the Department to possess that same power in Pennsylvania. The Supreme Court explained in *Martin* that the administrative actor had contact with a greater number of regulatory problems than the adjudicative actor because the adjudicative actor encountered only those episodes resulting in contested citations. Therefore, the administrative actor was "more likely to develop the expertise relevant to assessing the effect of a particular regulatory interpretation." *Id.* at 152–153, 111 S.Ct. 1177, 113 *L.Ed.*2d at 129. The Supreme Court relied upon this expertise, as well as the administrative actor's authority to promulgate regulations, to presume that Congress intended to invest the administrative actor with authoritative interpretive powers. Because the Department is more likely to develop expertise in assessing the effect of regulatory interpretations than the EHB, the Court is persuaded by *Martin* to presume that the General Assembly intended to invest the Department with authoritative interpretive powers.

The Supreme Court in *Martin* concluded that Congress did not intend the adjudicative actor to play a policy-making role, and that conclusion is persuasive in this case. Although traditional agencies with unitary structures may use adjudication as a mechanism for lawmaking, when the legislature invests an actor with adjudicative authority only, courts may not infer that the legislature intended the adjudicative actor to use its authority to play a policy-making role. Rather, the more plausible inference is that the legislature intended to

delegate the adjudicative actor "the type of nonpolicy-making adjudicatory powers typically exercised by a *court* in the agency-review context." *Martin*, 499 U.S. at 154, 111 S.Ct. at 1178, 113 *L.Ed.*2d at 130. The Court is persuaded by the reasoning of *Martin* that to invest the EHB with such power would place the EHB in a policy-making role that was not intended by the General Assembly.

The holding in *Martin* contradicts the EHB's argument that deferring to the Department's interpretations would be inconsistent with the EHB's duty to conduct *de novo* review. In referring to its review as *de novo*, the EHB means that it does not function as an appellate body, but rather it adjudicates matters in the first instance. *See Warren Sand & Gravel Co., Inc. v. Department of Environmental Resources*, 20 Pa.Cmwlth. 186, 341 A.2d 556 (1975). The Supreme Court, however, found nothing inconsistent in holding in *Martin* that the adjudicative actor, a tribunal of the first instance, was not the actor empowered to render authoritative interpretations. This Court is likewise unconvinced. The EHB's duty is to determine if the Department's actions can be sustained or supported by evidence taken by the EHB. *Warren Sand & Gravel.* Affording proper deference to the Department's reasonable interpretation of environmental regulations is wholly consistent with this duty.

Accordingly, the Court concludes that the Department, and not the EHB, is empowered to authoritatively interpret environmental regulations. That power is a necessary adjunct of the Department's authority to enforce environmental regulations. This result is consistent with this Court's precedent. The Court has stated on numerous occasions that the *Department's* interpretation of environmental regulations is entitled to great deference, unless the Department's interpretation is clearly erroneous. *See, e.g., Stoystown*

*Borough Water Authority v. Pennsylvania Department of Environmental Protection*, 729 A.2d 170 (Pa.Cmwlth.1999). When the EHB has failed to defer to the Department's interpretation of an environmental regulation that comports with the regulation's plain language and is also consistent with the statute under which the regulation was promulgated, this Court has reversed the EHB. *See Department of Environmental Resources v. BVER Environmental, Inc.*, 130 Pa.Cmwlth. 344, 568 A.2d 298 (1990).

■ The Court agrees with the EHB that the Department's interpretation of Section 127.207(2) is reasonable: it is consistent with the language of the regulation and with the Air Pollution Control Act. The operative language in Section 127.207(2) is that "an ERC registration application shall be submitted to the Department within 1 year of the initiation of an emissions reduction used to generate ERCs." Interpreting this language to mean that the time period begins to run at the "initiation" of the emissions reduction rather than at the time when the operator decides to make the emissions reduction permanent is wholly consistent with the regulation. This interpretation reasonably compels the operator to decide whether to make the emissions reduction permanent within a one-year period and thereby comports with the intent of the drafters as expressed in the Preamble: "This means that within 1 year of its deactivation a facility shall make a determination whether it will be reactivating under § 127.215, or will be shutting down permanently and desires to generate ERCs for trading or netting purposes under § 127.207." 24 Pa. B. 452 (1994).

■ The Court concludes that the EHB erred in refusing to defer to the Department's interpretation of Section 127.207(2) once the EHB concluded that the Depart-

ment's interpretation of the regulation was reasonable. However, because of the EHB's erroneous reasoning and result reached on the issue of regulatory interpretation, the EHB did not address North American's alternative argument that the Department's interpretation of Section 127.207(2) is invalid on grounds that it is more stringent than the requirements of federal law in violation of Section 4.2 of the Air Pollution Control Act, added by Section 5 of the Act of July 9, 1992, P.L. 460, 35 P.S. § 4004.2. The Department correctly argues that the Court should not reach this issue before it has been decided by the EHB. Accordingly, the EHB's order is reversed, and the matter is remanded to the EHB to determine whether Section 127.207(2), as interpreted by the Department, is invalid on grounds that it is more stringent than the requirements of federal law.

### *ORDER*

AND NOW, this 8th day of February, 2002, the order of the Environmental Hearing Board is hereby reversed, and this case is remanded to the Board for further proceedings in accordance with the foregoing opinion.

Jurisdiction is relinquished.