# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,      :
Department of Environmental        :
Protection,                        :
               Petitioner  :
                              :
      v.                :   No. 762 C.D. 2021
                              :
Clearfield County and PA Waste, LLC :
(Environmental Hearing Board),     :
            Respondents  :
 
PA Waste, LLC,                     :
              Petitioner  :
                              :
      v.                :   No. 771 C.D. 2021
                              :   Argued: May 17, 2022
Commonwealth of Pennsylvania,      :
Department of Environmental        :
Protection and Clearfield County   :
(Environmental Hearing Board),     :
            Respondents  :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE LORI A. DUMAS, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE DUMAS                 FILED: October 4, 2022

      The Pennsylvania Department of Environmental Protection (DEP) and

PA Waste, LLC (PA Waste) (collectively, Petitioners) petition for review of the June

10, 2021 opinion and order of the Environmental Hearing Board (Board)[1] granting

---

[1] Pennsylvania environmental administration is complex. The structure consists of "three independent, yet inter-related branches:" the Environmental Quality Board (EQB), the DEP, and the Board. *Tire Jockey Serv., Inc. v. Dep't of Env't Prot.*, 915 A.2d 1165, 1185 (Pa. 2007) (*Tire Jockey*). The EQB is the "administrative legislative branch" responsible for drafting, "adopting and promulgating rules and regulations for" DEP. *Id.* (cleaned up). The EQB may promulgate
(Footnote continued on next page…)

the motion for summary judgment filed by Clearfield County (County). The Board's order vacated a permit issued by DEP to PA Waste for building the Camp Hope Run Landfill (Landfill) in County and remanded to DEP for further proceedings. We affirm, but partially on other grounds.

## I. BACKGROUND

We briefly summarize the facts in the light most favorable to Petitioners as the non-moving party.[2] In 2006, PA Waste applied for a permit to build and operate the Landfill, which DEP eventually denied in 2015. In 2017, PA Waste again applied for a permit, which required PA Waste to demonstrate to DEP's satisfaction that the Landfill would comply with certain regulatory requirements discussed below. DEP approved the application and, in February 2020, published a notice in the Pennsylvania Bulletin that it had issued the permit.

Before the Board, County challenged the issuance of the permit and moved for summary judgment requesting rescission of the permit. The Board granted summary judgment in favor of County, vacated the permit, and remanded to DEP for further consideration of PA Waste's application after submission of

---

regulations, *i.e.*, legislative rules such as the Pennsylvania Code, and issue guidance documents, *i.e.*, non-legislative documents defined as "interpretative rules" if those documents explain a particular statute or regulation. *Nw. Youth Servs., Inc. v. Dep't of Pub. Welfare*, 66 A.3d 301, 310-311 (Pa. 2013). DEP is the "executive branch, assigned various duties to implement and enforce environmental statutes and regulations," and the Board is the "administrative judicial branch[.]" *Tire Jockey*, 915 A.2d at 1185 (cleaned up).

The Board "has the power and duty to hold hearings and issue adjudications . . . on orders, permits, licenses or decisions of" DEP. Section 4(a) of the Act of July 13, 1988, P.L. 530, *as amended*, 35 P.S. § 7514(a). The Board's "duty is to determine if DEP's action can be sustained or supported by the evidence taken by the" Board. *Pa. Trout v. Dep't of Env't Prot.*, 863 A.2d 93, 106 (Pa. Cmwlth. 2004) (citation omitted). The Board, however, is not "empowered to authoritatively interpret environmental regulations," as that "power is a necessary adjunct of [DEP's] authority to enforce environmental regulations." *Dep't of Env't Prot. v. N. Am. Refractories Co.*, 791 A.2d 461, 466 (Pa. Cmwlth. 2002) (*Refractories*).

[2] We discuss additional facts as needed, *infra*.

2

additional facts about the origin of waste and alternative locations for the landfill.

Briefly, in the Board's view, PA Waste's application insufficiently described the origin of waste to be disposed of at the Landfill. Bd.'s Op., 6/10/21, at 13-15. The Board also reasoned that a detailed description of the origin of waste would justify a need for the Landfill and suggested that contracts for waste disposal should be attached to PA Waste's application. *Id.* at 15-17. The Board critiqued as inadequate Petitioners' analysis that the site for the Landfill "is at least as suitable" as other alternative locations. *Id.* at 18. Finally, the Board concluded that DEP's Pennsylvania Bulletin notice, which publicized approval of PA Waste's application, failed to provide reasons for overriding County's objections to the Landfill. *Id.* at 22-23.

PA Waste and DEP each timely filed a petition for review of the Board's order in this Court. Petitioners stipulated to the consolidation of their appeals.

## II. DISCUSSION[3]

Petitioners raise four issues.[4] First, Petitioners argue this Court may exercise jurisdiction over the Board's interlocutory order under Pa.R.A.P. 311(f)(2). DEP's Br. at 2; PA Waste's Br. at 5-8. Second, Petitioners claim that under 25 Pa. Code § 273.112 (Origin Regulation), an applicant is not required to describe and

---

[3] Generally, our review of "a decision by the [Board] is limited to determining whether the [Board] committed an error of law [or] violated constitutional rights, or whether substantial evidence supports its findings of fact. A grant of summary judgment by the [Board] is proper where the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Global Eco-Logical Servs., Inc. v. Dep't of Env't Prot.*, 789 A.2d 789, 793 n.9 (Pa. Cmwlth. 2001) (*Global*) (cleaned up). We may affirm an administrative agency on any basis. *White v. Workmen's Compensation Appeal Board (Good Shepherd Rehab. Hosp.)*, 666 A.2d 1128, 1131 n.6 (Pa. Cmwlth. 1995).

[4] DEP raises four issues and PA Waste raises three issues, which we combined together.

3

provide documentation about the origin of waste intended for the Landfill. DEP's Br. at 2; PA Waste's Br. at 9. Third, Petitioners contend that under 53 P.S. § 4000.507[5] (Alternative Locations Statute), the proposed location for the Landfill "was at least as suitable as alternate locations." DEP's Br. at 2-3, 33; PA Waste's Br. at 9, 41. Fourth, Petitioners argue that DEP's Pennsylvania Bulletin notice complied with 35 P.S. § 6018.504[6] (Notice Statute). DEP's Br. at 3; PA Waste's Br. at 10.

### A. Exercising Appellate Jurisdiction of an Interlocutory Order

Petitioners argue that under Pa.R.A.P. 311(f)(2),[7] this Court may exercise jurisdiction over the instant order. DEP's Br. at 13; PA Waste's Br. at 5. Petitioners reason that if PA Waste was to provide the requested information, then the issue of whether the Board erred in requiring such information would evade appellate review. DEP's Br. at 6; PA Waste's Br. at 12.

Here, we agree with Petitioners that if the case proceeded on remand and the Board reviewed PA Waste's revised application, then the only appealable issues would be from PA Waste's revised application. *See Reeves Fam. Real Est., L.P. v. Bd. of Supervisors of Schuylkill Twp.*, 273 A.3d 1277, 1285 (Pa. Cmwlth. 2022) (*Reeves*); *Vanvoorhis v. Shrewsbury Twp.*, 176 A.3d 429, 433 (Pa. Cmwlth. 2017); *Schultheis v. Bd. of Supervisors of Upper Bern Twp.*, 727 A.2d 145, 147 (Pa.

---

[5] Section 507 of the Municipal Waste Planning, Recycling and Waste Reduction Act, Act of July 28, 1988, P.L. 556, *as amended*, 35 P.S. § 4000.507.

[6] Section 504 of the Solid Waste Management Act, Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. § 6018.504.

[7] Pennsylvania Rule of Appellate Procedure 311(f)(2) provides that an "appeal may be taken as of right from . . . an order of a . . . government unit remanding a matter to an administrative agency or hearing officer that decides an issue that would ultimately evade appellate review if an immediate appeal is not allowed." Pa.R.A.P. 311(f)(2).

4

Cmwlth. 1999).[8]  If an immediate appeal was not allowed, then Petitioners would lose their opportunity to appeal the Board's instant decision and argue that PA Waste's original application and DEP's approval were proper.  *See Reeves*, 273 A.3d at 1285; *Vanvoorhis*, 176 A.3d at 433; *Schultheis*, 727 A.2d at 147.  Therefore, we agree that the Board's order is appealable under Pa.R.A.P. 311(f)(2).

## B. Whether PA Waste's Application Complied with DEP Regulations

To address this issue, further background will provide useful context. The instant case involves two complex statutory schemes: the Solid Waste Management Act and the Municipal Waste Planning, Recycling and Waste

---

[8] In *Schultheis*, the township denied the applicant's residential plan as deficient.  *Schultheis*, 727 A.2d at 147.  The applicant appealed to the trial court, reasoning that he should have been given an opportunity to correct the deficiencies.  *Id.*  The trial court agreed with the applicant, reversed the township's decision, and remanded to permit the applicant to address the deficiencies.  *Id.*  The township appealed, arguing that if the applicant was permitted to revise his plan, and the township reviewed that plan on remand, then the only appealable issues would be from the applicant's revised plan.  *Id.*  The *Schultheis* Court agreed that the township could appeal as of right from the interlocutory remand order.  *Id.*

Similarly, in *Vanvoorhis*, the township conditionally approved the applicants' residential development plan.  *Vanvoorhis*, 176 A.3d at 431.  The applicants rejected one of the conditions, the township rejected the plan, and the applicants appealed to the trial court.  *Id.*  The trial court reversed the township and remanded for further proceedings.  *Id.* at 432.  The township appealed to this Court, arguing that the order was an appealable interlocutory order.  *Id.* at 433.  The *Vanvoorhis* Court agreed, reasoning that if the township again rejected the plan after remand, then on appeal, "the trial court would only review the new reasons for denial, and none from the prior litigation." *Id.*  The Court therefore agreed that the trial court's order would escape appellate review.  *Id.*

In *Reeves*, the trial court reversed the decision by the Board of Supervisors of Schuylkill Township (Schuylkill Board), which had rejected an application for a residential development plan.  *Reeves*, 273 A.3d at 1279.  The trial court's order explicitly approved the application and instructed the Schuylkill Board "to adopt reasonable conditions" on remand for the proposed development plan.  *Id.* at 1285.  Because the facts in *Reeves* were similar to the facts in *Vanvoorhis* and *Schultheis*, the *Reeves* Court held the order was an appealable interlocutory order under Pa.R.A.P. 311(f).  *Id.*

5

Reduction Act (Municipal Waste Act).[9]  In relevant part, it is a purpose of these Acts to regulate the operation of municipal waste disposal systems in order to protect the public from the dangers of transporting and disposing of municipal waste.  Section 102(3)-(4) of the Solid Waste Management Act, 35 P.S. § 6018.102(3)-(4); Section 102(b)(3) of the Municipal Waste Act, 53 P.S. § 4000.102(b)(3).[10]  The EQB may promulgate regulations that permit DEP to accomplish this purpose.  Section 105(a) of the Solid Waste Management Act, 35 P.S. § 6018.105(a); Section 302 of the Municipal Waste Act, 53 P.S. § 4000.302; *see generally* Section 1920-A of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, added by the Act of December 3, 1970, P.L. 834, *as amended*, 71 P.S. § 510-20(b).[11]

DEP's interpretation of two EQB regulations is specifically at issue. First, the Origin Regulation requires a permit application for a municipal waste landfill to contain a narrative describing the "general operational concept for the proposed facility, including the origin, composition and weight or volume of solid waste that is proposed to be disposed of at the facility[.]"  25 Pa. Code § 273.112.[12]

---

[9] Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. § 6018.101-6018.1003; Act of July 28, 1988, P.L. 556, No. 101, *as amended*, 53 P.S. §§ 4000.101-4000.1904.  By statute, we must liberally construe both acts and also construe them together.  Section 901 of the Solid Waste Management Act, 35 P.S. § 6018.901; Section 104(a)-(b) of the Municipal Waste Act, 53 P.S. § 4000.104(a)-(b).

[10] Each Act has at least ten statutory purposes.  35 P.S. § 6018.102; 53 P.S. § 4000.102; *see also Tire Jockey*, 915 A.2d at 1188 (noting that the Solid Waste Management Act was promulgated because the "General Assembly found that improper and inadequate solid waste practices create public health hazards, environmental pollution, and economic loss, and cause irreparable harm to the public health, safety and welfare." (cleaned up)).

[11] The EQB has adopted regulations addressing the general application requirements for a landfill permit and for a municipal waste landfill.  *See* 25 Pa. Code §§ 271.121-271.129; *id.* §§ 273.1-273.521; *see generally* 25 Pa. Code § 271.121 (explaining that a permit application must comply with Chapter 271, and if the application is for a municipal waste landfill, the application must comply with Chapter 273).

[12] The Origin Regulation states as follows:
(Footnote continued on next page…)

Second, Section 271.127 (Need Regulation) requires an applicant to demonstrate that the public benefits of the proposed municipal waste landfill "clearly outweigh the known and potential environmental harms." *Id.* § 271.127(c). In complying with Subsection (c), the applicant "may include an explanation of the need" for the landfill, if any. *Id.* § 271.127(f).[13]

Here, the Origin Regulation required PA Waste's application to

An application to operate a municipal waste landfill shall contain a narrative describing the following:

(1) The general operational concept for the proposed facility, including the origin, composition and weight or volume of solid waste that is proposed to be disposed of at the facility, the type of liner system, the proposed capacity of the facility, the expected life of the facility and the size, sequence and timing of solid waste disposal operations at the facility.

25 Pa. Code § 273.112(1).

[13] The Need Regulation provides:

*(c) Municipal waste landfills, construction/demolition waste landfills and resource recovery facilities.* If the application is for the proposed operation of a municipal waste landfill, construction/demolition waste landfill or resource recovery facility, the applicant shall demonstrate that the benefits of the project to the public clearly outweigh the known and potential environmental harms. In making this demonstration, the applicant shall consider harms and mitigation measures described in subsection (b). The applicant shall describe in detail the benefits relied upon. The benefits of the project shall consist of social and economic benefits that remain after taking into consideration the known and potential social and economic harms of the project and shall also consist of the environmental benefits of the project, if any.

\*   \*   \*

*(f) Need.* The description required by subsections (c) and (d) may include an explanation of the need for the facility, if any. Simply adding new capacity does not establish need for a facility.

25 Pa. Code § 271.127(c), (f).

7

describe the "general operational concept" for the Landfill, including "the origin . . . of solid waste" that would be disposed in the Landfill. *See id.* § 273.112(a). PA Waste's application stated that PA Waste did not know the origin of the solid waste that would be disposed at the Landfill. *See* Cnty.'s Mot. For Summ. J., 3/12/21, Ex. 21 (Application), at 2.[14] However, PA Waste also noted generally that waste would be delivered from "surrounding jurisdictions" and "sources outside of Pennsylvania." *See id.* Although DEP accepted PA Waste's general statements, the Board disagreed, holding that PA Waste's application did not sufficiently specify the origin of waste. Bd.'s Op. at 13-15.

Regulatory interpretation is a question of law, and therefore, the standard of review is *de novo*, *i.e.*, a reviewing court is not bound by or required to defer to a prior legal conclusion. *S&H Transp., Inc. v. City of York*, 210 A.3d 1028, 1038 (Pa. 2019); *In re Doe*, 33 A.3d 615, 623-24 (Pa. 2011).

Although the standard of review is *de novo*, an agency's interpretation is entitled to deference by the courts, and the level of such deference depends on how we categorize that interpretation. *Corman v. Acting Sec'y of Pa. Dep't of Health*, 266 A.3d 452, 485 (Pa. 2021);[15] *Woodford v. Pa. Ins. Dep't*, 201 A.3d 899,

---

[14] Specifically: "The origin, weight, and composition of the (projected) solid waste quantities to be disposed at the proposed Camp Hope Run Landfill facility are not known at the time of this application. In general, waste will be delivered from surrounding jurisdictions, as well as from sources outside of Pennsylvania and will include municipal solid waste, construction/demolition waste, and other approved residual and special wastes[.]" Appl. at 2.

[15] In harmonizing judicial deference with the *de novo* standard of review applicable to questions of law, our Supreme Court explained that while "courts traditionally accord the interpretation of the agency charged with administration of the act some deference, the meaning of a statute is essentially a question of law for the court, and, when convinced that the interpretative regulation adopted by an administrative agency is unwise or violative of legislative intent, courts disregard the regulation." *Commonwealth v. Gilmour Mfg. Corp.*, 822 A.2d 676, 679 (Pa. 2003) (*Gilmour*) (cleaned up); *Commonwealth ex rel. Fisher v. Jash Int'l, Inc.*, 847 A.2d 125, 133 (Pa. (Footnote continued on next page…)

902 n.3 (Pa. Cmwlth. 2019) (noting, "in a case involving a complex statutory scheme, courts exercise greater caution in substituting their discretion for the expertise of the [agency]"), *aff'd*, 243 A.3d 60 (Pa. 2020). Where an agency's interpretation of its own regulations is at issue, as in this case, its interpretation "should not be disregarded unless shown to be clearly erroneous." *Eagle Env't, L.P. v. Dep't of Env't Prot.*, 833 A.2d 805, 809 (Pa. Cmwlth. 2003) (*Eagle*) (cleaned up).[16]

In determining whether an interpretation is "clearly erroneous," courts examine: "(1) whether [DEP's] interpretation of the regulation is erroneous or inconsistent with the regulation, and (2) whether the regulation [as interpreted by DEP] is consistent with the statute under which it was promulgated."[17] *Tire Jockey*, 915 A.2d at 1186 (citations omitted).[18] In resolving whether the agency's regulatory

Cmwlth. 2004) (noting, "[o]nly where the language of a statute is ambiguous should we defer to an administrative agency's interpretation of a statute the agency is charged to enforce." (footnote omitted)).

[16] There are three categories of an agency's interpretation: (1) an agency's interpretation of its regulation interpreting an ambiguous statute, *i.e.*, *Chevron* deference; (2) an agency's interpretation of its own regulation, *i.e.*, *Auer* deference; and (3) an agency's interpretation of its non-legislative interpretive rules (guidance documents), *i.e.*, *Skidmore* deference. *See Corman*, 266 A.3d at 485 (discussing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and *Auer v. Robbins*, 519 U.S. 452 (1997)); *Nw. Youth Servs.*, 66 A.3d at 311-12 (discussing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)).

[17] These two factors address an agency's *interpretation* of a regulation. The *Tire Jockey* Court also identified three factors in resolving a challenge to an agency's *promulgation* of the regulation itself. *See Tire Jockey*, 915 A.2d at 1186 (stating that the regulation is valid if it is "(a) adopted within the agency's granted power, (b) issued pursuant to proper procedure, and (c) reasonable."); *see generally Bucks Cnty. Servs., Inc. v. Phila. Parking Auth.*, 195 A.3d 218, 227 (Pa. 2018). In this case, there is no challenge to DEP's promulgation of the Origin Regulation.

[18] For example, in *Tire Jockey*, a case also involving *Auer* deference, our Supreme Court interpreted a DEP regulation under the Solid Waste Management Act. *See Tire Jockey*, 915 A.2d at 1186 (citing cases relying on *Bowles v. Seminole Rock Co.*, 325 U.S. 410 (1945), which is synonymous with *Auer*), 1188. At issue was whether this Court improperly "substituted its own independent reading of the regulation, which was at odds with the DEP's and [the Board's] (Footnote continued on next page…)

9

interpretation is consistent with the statute, we must consider the purpose of the statute. *Id.* at 1188. Further, if a regulation contains an undefined term, then courts may resort to a dictionary to define that term. *Marcellus Shale Coal. v. Dep't of Env't Prot.*, 193 A.3d 447, 473 (Pa. Cmwlth. 2018). With this additional context, and having summarized the generally applicable law as background, we address each of Petitioners' three arguments.

## 1. The Definition of "Origin" in the Origin Regulation

### a. Arguments

First, DEP argues that PA Waste's application "did in general terms identify" the origin of the waste as required by the Origin Regulation. DEP's Br. at 25. DEP claims that its regulations did not require a more detailed response by PA Waste. *Id.* at 25, 31; *accord* PA Waste's Br. at 21. PA Waste similarly argues that the Board failed to defer properly to DEP's reasonable interpretation of the undefined term "origin" in the Origin Regulation. PA Waste's Br. at 17. PA Waste reasons that because "origin" was undefined, the term is ambiguous, and the Board erred by supplying a dictionary definition. *Id.* at 20.[19]

---

interpretation" of that regulation. *Id.* at 1188-89. The *Tire Jockey* Court held that there "was no evidence that the DEP's interpretation was made in bad faith, was arbitrarily executed or constituted a manifest abuse of discretion," and reversed this Court. *Id.* at 1190.

[19] PA Waste also raises a somewhat complex rhetorical argument. Very simply, PA Waste quotes a particular regulation that also references the term "origin," summarizes County's alleged interpretation of that regulation, and contrasts County's alleged interpretation with the Board's interpretation of the term "origin" in the Origin Regulation. PA Waste's Br. at 28-30.

More specifically, PA Waste describes 25 Pa. Code § 272.223 as requiring a county to submit a waste management plan that describes the "origin" of the waste. *Id.* at 29-30. PA Waste claims that County's own waste management plan did not include detailed information about the "origin" of the waste. *Id.* at 30. PA Waste then contrasts that interpretation with the Board's interpretation of "origin" as used in the Origin Regulation. *Id.* (stating, "County's complaint that it now needs to know the 'origin' of the waste at PA Waste's facility is inconsistent with how it developed its own county [waste management] plan."). Because of our disposition herein, we need not address this argument. Regardless, any interpretation of Section 272.223 is simply not at issue.

10

DEP relatedly asserts that the purpose of the Origin Regulation is to ensure that DEP has sufficient information to determine whether the Landfill would comply with County's preexisting waste management plan. DEP's Br. at 31-32. Given the Board's differing interpretation of the Origin Regulation, DEP asserts genuine issues of material fact exist as to the role of the Origin Regulation in the permit process and whether PA Waste's application complied with that Section. *Id.* at 33.

### b. Discussion

The plain meaning of the Origin Regulation requires PA Waste to describe the "general operational concept" for the Landfill, "including the origin" of the waste that would be disposed in the Landfill. 25 Pa. Code § 273.112. Because "origin" was not defined, we rely on a dictionary definition. *See Marcellus Shale Coal.*, 193 A.3d at 473. The dictionary definition of "origin" is "rise, beginning, or derivation from a source" and "the point at which something begins or rises or from which it derives." *Origin*, Webster's Ninth New Collegiate Dictionary (1990) (Webster's).[20] Therefore, the Origin Regulation requires PA Waste to describe where the waste begins, from which it derives, or its source. *See Marcellus Shale Coal.*, 193 A.3d at 473.[21]

PA Waste's application narrative, however, did not describe the source of the waste. Rather, PA Waste declared that it did not know the origin of waste that would be disposed of at the Landfill. *See* Appl. at 2 ("The origin . . . of the . . . waste

---

[20] *See Kunreuther & Merfeld, Inc. v. United States*, 5 Cust. Ct. 104, 105 (Cust. Ct. 1940) (defining "origin"); *see also Joe v. State*, ___ S.W.3d ___, ___ (Tex. Crim. App., No. PD-0268-21, filed June 22, 2022), 2022 WL 2233775, *4 (defining "point of origin" as "the place where something comes from or originates." (citation omitted)).

[21] Contrary to PA Waste's argument, *see* PA Waste's Br. at 20, just because a statutory term is undefined, does not mean the term must be ambiguous. *See Marcellus Shale Coal*, 193 A.3d at 471, 473 (explaining undefined terms may be given a dictionary definition).

11

quantities to be disposed at [the Landfill] are not known[.]"). PA Waste then arguably contradicted itself by noting that in "general, waste will be delivered from surrounding jurisdictions, as well as from sources outside of Pennsylvania[.]" *Id.* In sum, PA Waste's response stated that it did not know the source of waste but then described potential sources in rather oblique terms. *Id.*

DEP's interpretation of the Origin Regulation, under which it accepted PA Waste's narrative because it permitted DEP to conclude that the Landfill would comply with County's waste management plan, is inconsistent with the plain terms of the regulation. *See S&H Transp.*, 210 A.3d at 1038; *Tire Jockey*, 915 A.2d at 1189. It is inconsistent because the Origin Regulation requires PA Waste to describe the source of the waste that would be disposed at the Landfill, but PA Waste's application narrative was contradictory at best. *See S&H Transp.*, 210 A.3d at 1038; *Tire Jockey*, 915 A.2d at 1189. We add that the Origin Regulation does not state that the information is required to determine whether a waste landfill would comply with a waste management plan. *See Tire Jockey*, 915 A.2d at 1186.[22]

DEP's interpretation is also inconsistent with one of the purposes of the Acts. *See Tire Jockey*, 915 A.2d at 1187-88. If DEP is unaware of the origin of waste to be transported to and disposed of at the Landfill, then it is not clear how DEP can protect the public from the dangers associated with the transportation and disposal of municipal waste, *i.e.*, one of the purposes of the Acts. *See* 35 P.S. § 6018.102(3)-(4); 53 P.S. § 4000.102(b)(3); *Tire Jockey*, 915 A.2d at 1187-88.

In sum, because DEP's interpretation is inconsistent with the plain terms of the Origin Regulation and the purposes of the Acts, we agree with the Board to the extent it held that PA Waste's Origin Regulation narrative was insufficiently

---

[22] Moreover, DEP waived its argument by not citing any supporting legal authorities. *See Sobat v. Borough of Midlan*, 141 A.3d 618, 627 (Pa. Cmwlth. 2016).

detailed. *See Tire Jockey*, 915 A.2d at 1186; *Eagle*, 833 A.2d at 809. For these reasons, DEP is also due no relief on its claim that material issues of fact exist regarding its Origin Regulation interpretation. No material issues of fact exist, because, as a matter of law, PA Waste's Origin Regulation application narrative is both insufficient and contradictory. *See Global*, 789 A.2d at 793 n.9; *White*, 666 A.2d at 1131 n.6.

## 2. Construing the Origin and Need Regulations

### a. Arguments

Second, Petitioners argue that the Board erred by essentially linking the application narrative required by the Origin Regulation with the environmental assessment required by the Need Regulation. DEP's Br. at 25-29; PA Waste's Br. at 25-26. According to Petitioners, the Board reasoned that because the Need Regulation requires a discussion of the "need" for a landfill, that discussion necessarily requires more detailed information about the "origin" of the waste under the Origin Regulation. DEP's Br. at 28; PA Waste's Br. at 25.[23]

Petitioners reject this reasoning, asserting that the Need Regulation merely suggests an explanation of need but does not require it. DEP's Br. at 28; PA Waste's Br. at 26. It is, according to Petitioners, an optional element of the Need Regulation's environmental assessment. DEP's Br. at 28; PA Waste's Br. at 26. Thus, Petitioners conclude, the Board erred by relying upon that optional element to compel an applicant to provide greater specificity about the origin of waste in the application.

---

[23] In other words, although the Origin Regulation's use of "origin" standing alone may or may not require a particular level of detail, because the Need Regulation requires a discussion of "need," a meaningful discussion of "need" requires greater detail about the "origin" of the waste in the Origin Regulation's application narrative. *See* DEP's Br. at 28.

**b. Discussion**

We agree with Petitioners that the Board erred as a matter of law by misconstruing the plain language of the Need Regulation, which states that a discussion of need is *optional*. *See* 25 Pa. Code § 271.127 (stating that the application "*may* include an explanation of the need" for the Landfill) (emphasis added); *S&H Transp.*, 210 A.3d at 1038; *Global*, 789 A.2d at 793 n.9; *see also Refractories*, 791 A.2d at 466. The Board similarly erred when, absent any regulatory basis, it superimposed the optional "need" discussion upon the mandatory "origin" narrative, thus increasing the required level of detail in PA Waste's application narrative. *See Refractories*, 791 A.2d at 466.

Although the Board's reasoning was flawed in this regard, the plain language of the Origin Regulation required PA Waste to describe where the waste begins, from which it derives, or its source. *See Origin*, Webster's. Thus, Petitioners are not entitled to relief. *See White*, 666 A.2d at 1131 n.6; *In re A.J.R.-H.*, 188 A.3d 1157, 1176 (Pa. 2018) (noting, "[i]t would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate" (cleaned up)).

**3. Whether the Regulations Require Contracts**

**a. Arguments**

Third, Petitioners challenge the Board's requirement that PA Waste include contracts for the disposal of waste as part of its permit application. PA Waste's Br. at 23; DEP's Br. at 18, 24. Petitioners stress that no DEP regulation requires PA Waste to attach such contracts. PA Waste's Br. at 24; DEP's Br. at 18.

14

**b. Discussion**

Instantly, we agree with Petitioners that no regulation requires the submission of waste contracts as part of PA Waste's permit application.[24] Therefore, to the extent the Board required PA Waste to submit contracts as part of its Origin Regulation application narrative, the Board erred. *See Refractories*, 791 A.2d at 466; *Global*, 789 A.2d at 793 n.9. Because we affirm the Board on other grounds, however, Petitioners are due no relief. *See White*, 666 A.2d at 1131 n.6; *In re A.J.R.-H.*, 188 A.3d at 1176.

## C. Whether the Application Complied with the Alternative Locations Statute

We need not summarize Petitioners' arguments in great detail. Briefly, DEP acknowledges that it reviewed the "environmental and economic impact of existing landfills" and "compared the known impact" of those landfills to the anticipated impact of the Landfill. DEP's Br. at 34. DEP challenges the Board's interpretation of the Alternative Locations Statute, maintaining that its analysis was compliant. *Id.* PA Waste raises similar arguments. *See* PA Waste's Br. at 31-34.

The Alternative Locations Statute requires that "the *applicant* demonstrates to [DEP's] satisfaction that the proposed facility . . . is at least as suitable as alternative locations," after considering environmental and economic factors. 53 P.S. § 4000.507(a)(2)(iii) (emphasis added).[25] The Municipal Waste Act

---

[24] Other regulations require a copy of a signed contract, if, for example, there is offsite leachate treatment. *See, e.g.*, 25 Pa. Code § 273.162.

[25] Section 507 follows:

> **(a) Limitation on permit issuance.**—[DEP] shall not issue any permit . . . for a municipal waste landfill . . . in the county unless the applicant demonstrates to [DEP's] satisfaction that the proposed facility:

> \* \* \*

(Footnote continued on next page…)

does not define "applicant," nor has DEP cited any regulations or guidance documents construing the Alternative Locations Statute.[26] However, undefined words in a statute must be "construed according to their common and approved usage." 1 Pa.C.S. § 1903(a). Webster's defines "applicant" as "one who applies." *Applicant*, Webster's; *see also Donnelly v. Bauer*, 720 A.2d 447, 452 (Pa. 1998) (defining applicant in the context of an insurance coverage statute to be "a person asking for something"). Finally, we give effect to the legislature's intent and all of a statute's provisions based on the plain language. *Crown Castle NG E. v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 674 (Pa. 2020).[27]

Instantly, under the common and approved usage of the term "applicant," the Alternative Locations Statute requires that a "person asking for" or "one who applies" for a landfill permit demonstrate to DEP's satisfaction that the Landfill fulfills various requirements. *See* 53 P.S. § 4000.507; *Donnelly*, 720 A.2d at 452.

However, PA Waste, as the applicant, did *not* prepare this "alternative locations" analysis. Rather, DEP concedes that *it* (not PA Waste) conducted the

---

(2) meets all of the following requirements:

&ast;   &ast;   &ast;

    (iii) The proposed location of the facility is at least as suitable as alternative locations giving consideration to environmental and economic factors. . . ."

53 P.S. § 4000.507.

[26] Agencies may construe a particular statute by promulgating regulations that "are accorded the force of law" or issuing guidance documents, *i.e.*, interpretative rules. *Nw. Youth Servs.*, 66 A.3d at 310-11.

[27] *See Const. Drive Partners, L.P. v. Dep't of Env't Prot.*, 247 A.3d 1198, 1207 (Pa. Cmwlth. 2021) ("It is a well-settled maxim that where the words of a statute are clear and free from ambiguity, the legislative intent is to be gleaned from those very words, and the plain language is not to be disregarded under the pretext of pursuing its spirit." (citations omitted)).

analysis regarding the proposed location of Landfill. *See, e.g.*, DEP's Br. at 33; DEP's Resp. to Cnty.'s Statement of Undisputed Facts, ¶13.[28] Therefore, DEP acted as both the applicant, recipient, and reviewer of its own analysis. The unambiguous language of the Alternative Locations Statute, however, requires PA Waste, as the "applicant," to make the required demonstration. *See* 53 P.S. § 4000.507. Nothing in the Alternative Locations Statute permits an applicant to delegate its statutory obligation to an agency like DEP. *See id.* We therefore affirm the Board, albeit on different grounds. *See White*, 666 A.2d at 1131 n.6; *In re A.J.R.-H.*, 188 A.3d at 1176.[29]

### D. Pennsylvania Bulletin Notice Requirement

Finally, Petitioners contend that DEP's notice published in the Pennsylvania Bulletin was sufficient to provide the County with an opportunity to

---

[28] Specifically, DEP pleaded:

> [DEP] performed the alternative analysis required by Section 507(a)(2). [DEP] had not previously processed a landfill permit application under Section 507(a) and no guidance had been developed on how permit applicants should conduct the analysis. [DEP] wanted the analysis to be based on uniform criteria and objective data as much as possible. [DEP] used the criteria for an environmental assessment to perform the alternative analysis, and it used data from existing landfills to represent comparable impacts from possible alternate locations for the landfill. Finally, [DEP] wanted to minimize the potential that the applicant would predetermine the outcome of the evaluation by choosing poorly situated comparable locations. [DEP] formalized its analysis in a memorandum and made it a part of the permit file that was available for public review. [DEP] concluded that the location of the proposed landfill was at least as suitable as possible alternate locations.

DEP's Resp. to Cnty.'s Statement of Undisputed Facts, ¶13.

[29] The Board had addressed the substantive merits of DEP's "alternative locations" analysis. Because it is undisputed that DEP is not the *applicant* under the Alternative Locations Statute, we need not address Petitioners' arguments regarding the analysis. We add that permitting DEP to both support and review a permit application is an apparent conflict of interest. *See Tire Jockey*, 915 A.2d at 1185.

17

review and comment on PA Waste's permit application. DEP's Br. at 40. Petitioners therefore challenge the Board's reasoning that DEP's notice should have further specified that DEP was responding to and overriding the County's recommendations. *Id.* at 41-42; PA Waste's Br. at 45-46. Regardless, Petitioners maintain that County failed to establish any actual prejudice from this purportedly defective notice. DEP's Br. at 41-42; PA Waste's Br. at 47.

The Solid Waste Management Act addresses the form of notice that must be published in the Pennsylvania Bulletin. Specifically, the Notice Statute provides that if a county has made recommendations to DEP about a landfill permit application, DEP is "required to publish in the Pennsylvania Bulletin its justification for overriding the county's recommendations[.]" 35 P.S. § 6018.504. Similarly, 25 Pa. Code § 271.142 (Notice Regulation) requires DEP to "publish a notice in the *Pennsylvania Bulletin*" of DEP's "[j]ustification for overriding county or host municipality recommendations regarding an application for a new permit, permit reissuance, permit renewal or major permit modification under" the Notice Statute. 25 Pa. Code § 271.142. Therefore, the Notice Statute and Regulation requires DEP to publish a notice that includes a justification of its decision to override a county's recommendation.

The instant record contains no statutory or regulatory definition of "justification." Because DEP has issued no guidance documents clarifying the Notice Statute and Regulation, we examine the common and accepted usage of "justification." *See S&H Transp.,* 210 A.3d at 1038. One common and approved usage of the term "justification" is "the act or an instance of justifying" and "something that justifies." *Justification*, Webster's.[30] "Justify" is defined as "to

---

[30] *See also Justification*, Black's Law Dictionary (11th ed. 2019) (defining the term as a (Footnote continued on next page…)

18

prove or show to be just, right, or reasonable." *Justify*, Webster's. Therefore, the plain language of the Notice Statute and Regulation requires that DEP publish something that justifies or shows why its decision to override County's recommendations was just, right, or reasonable. *See id.*

Here, the County reviewed and responded to PA Waste's application. DEP held a public hearing and posted the following notice in the Pennsylvania Bulletin:

> **Permit No. 101719**. PA Waste, LLC . . . . This permit is for the construction and operation of the 845-acre Camp Hope Run municipal waste landfill . . . . The permit was issued by the Northcentral Regional Office on January 28, 2020.
>
> The Department held a public hearing . . . . The comment and response document developed from that meeting can be found on the Department's website . . . .

50 Pa. B. 857 (2020).[31] DEP's comment and response document was 86 pages long and purportedly responded to County's comments. *See* Cnty.'s Mot. for Summ. J., Ex. 16.

In our view, DEP's Pennsylvania Bulletin notice did not publish "something that justifies" or a "show" of DEP's reasons for overriding County's recommendation. *See Justification*, Webster's; *Justify*, Webster's. Even assuming an agency is permitted to incorporate a document by reference, DEP's use of the phrase "comment and response document" did not definitively signal to the public that the document would contain DEP's "justification." *See id.* For these reasons,

---

"lawful or sufficient reason for one's acts or omissions; any fact that prevents an act from being wrongful").

[31] We observe that the Pennsylvania Bulletin notice directed readers to a particular website page, but subsequently, DEP's website was revised, which invalidated the notice's directions.

19

we agree with the Board that DEP's notice is deficient.[32]

### III. CONCLUSION

In sum, we hold as follows. Petitioners may file an interlocutory appeal of right from the Board's order. Otherwise, Petitioners would lose their opportunity to challenge the Board's decision.

Further, we hold that DEP's interpretation of the Origin Regulation is inconsistent with that regulation's plain terms and hinders DEP's ability to further the Acts' statutory purpose of protecting the public from the dangers of transporting and disposing of municipal waste. For these reasons, we conclude that PA Waste's failure to identify the origin of waste destined for the Landfill rendered its application deficient. Nevertheless, we reject the Board's linkage of the Need Regulation to the Origin Regulation, as the plain language of the Need Regulation indicates that any discussion of need is optional. Moreover, nothing in our decision requires PA Waste to provide contracts as part of its application under the present regulatory scheme.

We also conclude that PA Waste failed to submit the analysis required by the Alternative Locations Statute. DEP may not perform and submit this analysis on behalf of an applicant. Finally, DEP's Pennsylvania Bulletin notice was deficient because it did not provide notice of its reasons for overriding the County's

---

[32] We acknowledge Petitioners' argument that because County failed to allege or otherwise demonstrate actual prejudice from any flawed notice, County is not entitled to any remedy. We need not address that argument because we agree with the Board that PA Waste must supplement its application. Assuming DEP approves PA Waste's application, County will decide whether to make any recommendations regarding any new permit, which may require a new Pennsylvania Bulletin notice. We only resolve that under the plain language of the Notice Statute and Regulation, DEP's Pennsylvania Bulletin notice did not notify the public that its notice contained "[j]ustification for overriding county or host municipality recommendations regarding an application for a new [landfill] permit[.]" *See* 25 Pa. Code § 271.142; *accord* 35 P.S. § 6018.504.

recommendations.

For these reasons, we affirm the Board's decision to grant County's motion for summary judgment adverse to Petitioners, vacate the permit, and remand to DEP for further proceedings after PA Waste supplements its application with, *inter alia*, additional detail about the origin of waste to be transported to and disposed at the Landfill.

_____
LORI A. DUMAS, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,
Department of Environmental
Protection,
                Petitioner

        v.

Clearfield County and PA Waste, LLC
(Environmental Hearing Board),
                Respondents

:
:
:
:
:
:
:
:   No. 762 C.D. 2021
:
:
:
:
:

PA Waste, LLC,
                Petitioner

        v.

Commonwealth of Pennsylvania,
Department of Environmental
Protection and Clearfield County
(Environmental Hearing Board),
                Respondents

:
:
:
:
:
:   No. 771 C.D. 2021
:
:
:
:
:
:

## **O R D E R**

AND NOW, this 4th day of October, 2022, we affirm the June 10, 2021 order by the Environmental Hearing Board, which granted Clearfield County's motion for summary judgment, vacated the permit, and remanded to the Department of Environmental Protection for further proceedings. As set forth in our decision, PA Waste, LLC, must supplement its application with, among other things, information about the origin of waste and its analysis under Section 507(a)(2)(iii) of the Municipal Waste Planning, Recycling and Waste Reduction Act, Act of July 28, 1988, P.L. 556, *as amended*, 53 P.S. § 4000.507(a)(2)(iii).

 

 

                                    _____
                                      LORI A. DUMAS, Judge